840 P.2d 1090

Larry K. MIKESELL and Rose Mikesell, husband and wife, Plaintiffs–Respondents–Cross Appellants,

v.

NEWWORLD DEVELOPMENT CORPORATION, an Idaho corporation, and Rockland K. Judd, Defendants and Third–Party Plaintiffs–Appellants–Cross Respondents,

v.

Melrose BURGESS and Berniece Burgess, husband and wife, Ed Burgess, individually and doing business as Agri–West Realty; Land Title & Escrow, Inc., an Idaho corporation, Third Party Defendants–Respondents.

No. 19389.

Court of Appeals of Idaho.

Sept. 1, 1992.

Petition for Review Denied Nov. 30, 1992.

Ling, Nielsen & Robinson, Rupert, for appellants/cross respondents. Brent T. Robinson argued.

Donald J. Chisholm, Burley, for respondents/cross appellants Mikesell.

James Annest, Burley, for respondents Burgesses.

Parsons, Smith, Stone & Fletcher, Burley, for respondent Land Title & Escrow, Inc. William Parsons argued.

SILAK, Judge.

This appeal concerns a dispute over the ownership of a thirty-foot wide strip of land (thirty-foot parcel) between the real properties of Larry and Rose Mikesell and Newworld Development Corp. The Mikesells claim title to the property by virtue of a partly performed oral agreement they entered into with Melrose and Berniece Burgess, Newworld's predecessors in title. Newworld claims title by virtue of its deed, which includes the disputed strip of land in the legal description of the parcel purchased from the Burgesses. The Mikesells sued Newworld to quiet title and for compensatory and punitive damages. After trial, the district court found in favor of the Mikesells and ordered Newworld to convey title to the Mikesells. The district court refused to award punitive damages to the Mikesells on the ground that the Mikesells failed to comply with I.C. § 6–1604(2). Newworld has appealed the district court's judgment, and the Mikesells have cross-appealed. For the reasons set forth below, we affirm with respect to the issues raised by Newworld, and we reverse and remand with respect to the issue raised by the Mikesells.

## FACTS AND PROCEDURAL BACKGROUND

The following facts were found by the district court. On June 1, 1983, the Burgesses purchased from Isaac and Pearl Lee a parcel of real property located in Cassia County, Idaho. The Lees conveyed this real property to the Burgesses by warranty deed. The Lees financed $63,040 of the $80,000 purchase price, and the Burgesses executed a Deed of Trust to secure the unpaid balance of the purchase price. The Deed of Trust was properly recorded, naming Land Title and Escrow, Inc. as trustee.

Later, the Burgesses purchased from the Lees a second parcel of real property twenty feet wide on the west side of the original parcel purchased from the Lees. The Burgesses paid the Lees cash for the additional parcel, but did not receive or record a document of title on the property.

On November 20, 1985, the Mikesells purchased from the Lees a parcel of real property located immediately to the east of the Burgesses' parcel. The Lees conveyed this parcel to the Mikesells by warranty deed. Both the Burgesses and the Mikesells lived in the residences on their respective properties from the time they purchased them.

The southern sides of the properties purchased by the Burgesses and the Mikesells border on County Road 300 South. The east boundary of the Burgesses' property is the west boundary of the Mikesells' property. The Mikesells had a driveway which ran along the east and north sides of their property. In 1987, the Mikesells asked the Burgesses if they could purchase the eastern thirty to thirty-five feet of the Burgesses' lot in order to continue their driveway along the west side of their property so that the driveway would form a complete "U" around the Mikesells' home, beginning and ending on the east and west ends of the property at 300 South Road. At the time, the Burgesses were using this eastern portion of their lot as part of an open pasture.

By oral agreement, the Burgesses agreed to sell and the Mikesells agreed to purchase the thirty-foot parcel for $50 per front foot along the county road. The parties agreed that the payments would be made in installments, upon demand, and that the Mikesells would receive clear title to the parcel in question upon completion of payment. No agreement was reached as to when the entire amount of $1,500 ($50 X 30 front feet) would be paid. The Mikesells paid by check an initial installment of $600 on or about May 19, 1987. In July, 1987, the Burgesses requested that the Mikesells pay additional money on the parcel. Pursuant to that request, the Mikesells issued another check to the Burgesses for $600. Shortly after the Mikesells made the second payment, the Burgesses gave the Mikesells a receipt for the payments which had been made. This receipt acknowledged the two $600 payments by the Mikesells, and indicated that the payments were for the thirty-foot parcel, at $50 a foot, leaving a balance of $300 to be paid. The Mikesells did not make the final $300 payment prior to the commencement of this action, and they never received or recorded a document of title for the thirty-foot parcel.

After entering into the oral agreement, the Mikesells took immediate possession of the parcel and began to make a number of improvements on it. They paid approximately $800 for the excavation, grading and construction of a gravel driveway down the length of the parcel. In the spring of 1989, they purchased and planted about twenty-one trees along the west boundary of the parcel at a cost of $20 per tree, plus the time and labor for planting. The Mikesells also purchased the materials and performed the labor to install a drip irrigation system. Until March 26, 1990, the Mikesells were in exclusive possession and control of the now-disputed parcel.

In the summer of 1989, the Burgesses were delinquent on their payments to the Lees, and the Lees started proceedings to foreclose the Deed of Trust which they held on the Burgesses' parcel. The foreclosure sale was scheduled for January 29, 1990. Notice of the foreclosure sale was advertised in the local newspaper, which notice contained the same legal description

of the Burgesses' property as the Warranty Deed from the Lees to the Burgesses, as well as the Deed of Trust from the Burgesses to the Lees. Thus, the thirty-foot parcel was included in the description of the Burgesses' property in the notice of foreclosure sale. The district court found that the thirty-foot parcel which the Mikesells had purchased from the Burgesses was encumbered by the Lees' Deed of Trust and was included in the foreclosure sale. The foreclosure sale did not include the twenty-foot strip of land on the west side of the Burgesses' lot which the Burgesses had purchased from the Lees after purchasing the original parcel of property. The Lees had not deeded the twenty-foot parcel to the Burgesses and did not have a Deed of Trust on that parcel.

When the Mikesells learned of the pending foreclosure sale, they contacted the Lees, the beneficiaries under the Deed of Trust, to inform the Lees of their interest in the thirty-foot parcel on the east side of the Burgesses' property, and to inquire as to what they should do to protect that interest. The Mikesells also contacted Larry Roberts, general manager of Land Title, to inform him of their interest in the strip of land. The Lees also contacted Roberts to tell him about their conversation with the Mikesells and to let him know that they were sympathetic to the Mikesells' situation and that they wanted to see that the Mikesells received title to the thirty-foot parcel.

Rockland Judd is the president and a director of Newworld; his wife, Ellen Judd, is the secretary of Newworld; and their thirteen-year-old daughter is the vice president. Rockland Judd testified that his thirteen-year-old daughter owns all of Newworld's stock, but that he controls all of the actions of Newworld. After the Judds learned of the pending foreclosure sale of the Burgesses' property sometime in November, 1989, they contacted the Lees, the Burgesses, and Ed Burgess, the Burgesses' son and realtor, to see if they could make arrangements to purchase the Burgesses' property. At this time, Rockland Judd was a licensed real estate agent, and he had worked in the real estate business

on a full or part-time basis for several years. Ed Burgess was working with his parents at this time trying to salvage whatever equity they might have in the property that was the subject of the foreclosure. In addition to the Deed of Trust in favor of the Lees, the Burgesses' property was encumbered by a judgment of between $80,000 to $100,000 in favor of Donna Arnold, the former wife of Ed Burgess.

Prior to purchasing the Burgesses' property, Rockland Judd knew of the Mikesells' interest in the thirty-foot parcel on the east side of the property. Judd had a number of conversations with the various Burgesses prior to purchasing the property, during which he was expressly told that the Mikesells had already purchased the thirty-foot parcel at the east end of the Burgesses' lot, and that he could not purchase that land. The Burgesses told Judd, however, that instead of the thirty feet on the east side of the property, he would receive the twenty-foot parcel located on the west of the Burgesses' property. In these various conversations, Judd indicated to the Burgesses that he had no problem with the proposed exchange if the Burgesses would agree to sell him their property before the scheduled foreclosure sale.

Judd made arrangements to purchase the Burgesses' property on January 26, 1990, three days before the scheduled foreclosure sale. Prior to closing, Judd made arrangements to obtain the release of the Donna Arnold judgment lien against the Burgesses' property. He also hired a professional land surveyor to locate the four corners of the Burgesses' property. However, Judd did not at any time attempt to contact the Mikesells to discuss with them their interest in the disputed thirty-foot parcel.

The closing was conducted by Roberts, general manager of Land Title. In addition to Roberts, the Burgesses, Ed Burgess, the Judds, and Glenn Judd—Rockland Judd's father—were present at the closing. Rockland Judd instructed Land Title to prepare the deed to convey the Burgesses' property to Newworld, rather than to Rockland and Ellen Judd as individuals. During

the closing, the Mikesells' interest in the disputed parcel was discussed again, and the Judds were reminded that Newworld was purchasing the Burgesses' property subject to the Mikesells' interest in the thirty-foot parcel. When Roberts asked the Burgesses and the Judds if they wished to draft the deed to expressly exclude the parcel in question from the conveyance to Newworld, the Burgesses and the Judds agreed that no written exclusion was necessary in light of Rockland Judd's assurance to the Burgesses that he would take care of the matter with the Mikesells. An exclusion as to the parcel in question was not included in the deed given to Newworld because the Burgesses, Ed Burgess, and Land Title relied upon Rockland Judd's representation that he would honor the agreement between the Burgesses and the Mikesells and convey title to the disputed parcel to the Mikesells. Berniece Burgess would not have signed the deed but for Judd's promise to honor the agreement between the Burgesses and the Mikesells. Contemporaneous with the closing of the sale from the Burgesses to Newworld, the Lees conveyed directly to Newworld title to the twenty-foot parcel west of the original property purchased by the Burgesses.

The Judds moved onto the property purchased from the Burgesses immediately after closing. The Judds did not contact the Mikesells to inquire about the travel trailer, the trees, the boundary, or the Mikesells' interest in the disputed parcel, nor did they advise the Mikesells of their plans to exercise control over the parcel in question. On March 24, 1990, when the Mikesells were out of town, the Judds took possession of the thirty-foot parcel: they moved the Mikesells' travel trailer off the parcel; they removed the drip-irrigation system the Mikesells had installed to water the trees; they disked-up the gravel driveway which the Mikesells had installed; they installed steel posts at the south end of the parcel where the driveway connected with 300 South; they installed more steel posts at the point where the driveway along the rear of the Mikesells' property connected to the north end of the driveway on the disputed parcel; and they erected a fence

along the original boundary between the Mikesells' and the Burgesses' properties, thus preventing the Mikesells from accessing the driveway or any part of the parcel in question.

After returning home and finding the altered condition of the property, the Mikesells consulted their attorney, who contacted the Judds to notify them of the Mikesells' claim to the disputed parcel. The Judds denied any and all claims to the property asserted by the Mikesells on the basis of the legal description of the property which they had purchased from the Burgesses, as contained in their deed.

Subsequently, the Mikesells sued the Judds to quiet title to the disputed parcel. The Judds counterclaimed against the Mikesells and filed third-party claims against the Burgesses, Ed Burgess d/b/a Agri–West Realty, and Land Title. At trial, the Judds claimed that prior to purchasing the Burgesses' property they had no knowledge of the Mikesells' interest in the thirty-foot parcel. They further claimed that the Burgesses, Ed Burgess, and Roberts all knew of the Mikesells' interest but failed to disclose it to them, and therefore the Burgesses had breached the terms of their warranty deed. The Judds also claimed that Ed Burgess was negligent in his conduct as the selling agent, and Roberts was negligent as closing agent. Newworld further claimed that by the express terms of its document of title, the thirty-foot parcel belonged to Newworld, and the third-party defendants were liable for Newworld's costs in defending its title against the Mikesells.

After trial, the district court found that the Judds had both actual and constructive knowledge of the Mikesells' interest in the thirty-foot parcel in question, and that Rockland Judd made misrepresentations with the intent to mislead and deceive the Burgesses, Ed Burgess, and Roberts, in order to prevent the insertion of a written exclusion as to the parcel in question in the deed from the Burgesses to Newworld. The court concluded that the contract between the Mikesells and the Burgesses for the sale and purchase of the disputed par-

cel was valid and binding; that Newworld was not a bona fide purchaser of the disputed parcel because it purchased the property with knowledge of the Mikesells' interest; that Newworld purchased the Burgesses' property subject to the prior interest of the Mikesells; and that the Mikesells were entitled to have title to the disputed parcel quieted in their name. The district court also entered judgment against Newworld in favor of the Burgesses, Ed Burgess, and Land Title, and awarded attorney fees to the prevailing parties. The district court refused to award punitive damages to the Mikesells on the grounds that the Mikesells had not followed the procedure for pursuing punitive damages as set forth in I.C. § 6–1604(2).

The Mikesells made a post-trial motion to amend the trial court's findings and conclusions to allow them to recover punitive damages, and Newworld made a post-trial motion to disallow the award of attorney fees to the prevailing parties. Both motions were denied. Newworld then appealed from the district court's findings and conclusions, and the Mikesells cross-appealed.

### ISSUES ON APPEAL

Newworld has raised the following issues on appeal:

1. Whether the trial court erred in quieting title in the Mikesells and in ordering specific performance of the oral agreement between the Mikesells and the Burgesses.

2. Whether the trial court erred in admitting parol evidence of the terms of sale between Newworld and the Burgesses.

3. Whether the trial court erred in reforming the deed between the Burgesses and Newworld.

4. Whether the trial court erred in finding no negligence by Ed Burgess and Land Title, and no breach of contract on the part of Land Title.

5. Whether the trial court erred in awarding attorney fees to each of the parties, and in failing to award attorney fees to Newworld against the Burgesses.

In their cross-appeal, the Mikesells' challenge the district court's determination that they could not recover punitive damages because of their failure to comply with the provisions of I.C. § 6–1604(2).

All of the parties seek payment of their costs and attorney fees on appeal. We will discuss each of the issues raised by the parties in turn.

### ANALYSIS

1. *The District Court's Findings and Conclusions Quieting Title in the Mikesells and Ordering Newworld to Convey Title to the Mikesells.*

Newworld asserts that the district court erred in concluding that the oral agreement between the Burgesses and the Mikesells for the sale and purchase of the thirty-foot parcel was valid and enforceable, and in specifically enforcing that agreement by ordering Newworld to convey title to Mikesells. Newworld claims that the agreement between the Burgesses and the Mikesells was invalid for violating the statute of frauds because it concerned the transfer of real property and the parties failed to put their agreement in writing. For the following reasons, we hold that the district court did not err when it quieted title in the Mikesells.

First, it is a well-settled principle in Idaho that an oral agreement for the sale and purchase of real estate may be enforced if it has been partially performed. Although I.C. § 9–503 requires that agreements to convey real property must be in writing, the subsequent section provides an exception to that rule, stating:

**Exceptions to the preceding section.—** The preceding section must not be construed to ... abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof.

I.C. § 9–504. "Thus, so long as partial performance has occurred under the contract, the trial court [has] the discretion to compel specific performance, despite the lack of written evidence of the parties' agreement." *Jolley v. Clay*, 103 Idaho

171, 177, 646 P.2d 413, 419 (1982). "The doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel." *Frantz v. Parke,* 111 Idaho 1005, 1009, 729 P.2d 1068, 1072 (Ct.App.1986). Thus, "in some circumstances, part performance may establish an equitable ground to avoid the strictures of the statute of frauds." *Id.*

A [party] who is induced to rely on an oral agreement and who changes position to his own detriment cannot be defrauded by [one] who interposes the Statute of Frauds to declare the agreement invalid. In weighing the factors which constitute part performance and which therefore raise an equitable estoppel against any [party] who attempts to raise the Statute of Frauds, this Court has long held:

The most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements and these two combined.

*Roundy v. Waner,* 98 Idaho 625, 628–29, 570 P.2d 862, 865–66 (1977) (citations omitted).

In the present case, it is undisputed that the Mikesells took possession of the thirty-foot parcel and exercised exclusive control over the premises for approximately three years. The Mikesells made permanent and substantial valuable improvements relative to the value of the disputed parcel, and they paid the Burgesses $1,200 of the $1,500 purchase price. Thus, the Mikesells, in reliance on their oral agreement with the Burgesses, changed their position to their detriment by taking actual possession of the property, paying the majority of the purchase price, and making permanent valuable improvements on the property. These actions by the Mikesells can only be attributed to the existence of the oral contract they entered into with the Burgesses.

■ Clearly, based on the legal principles set forth above, the Mikesells' partial performance of the oral agreement would estop the Burgesses from raising the statute of frauds as a defense to liability under the agreement. However, in this case it is not the Burgesses that seek to use the statute of frauds as a defense to the contract, but Newworld, the Burgesses' successor in title. We hold that, in this case, the principles of part performance and equitable estoppel are equally as applicable to Newworld as they are to the Burgesses. We note first that neither of the original parties to the oral contract deny that the agreement was made. Both the Burgesses and the Mikesells testified at trial that they had orally agreed to sell and purchase the parcel in question. Even more importantly, the trial court found and concluded that "Newworld is estopped from denying that it had knowledge of the interest of Mikesells, in that Rockland Judd, Newworld's officer and agent, had actual notice of the possession, occupation, use, and enjoyment of the thirty (30) foot parcel purchased by Mikesells from Burgesses." Because Newworld had actual knowledge of the agreement and the substantial part performance by the Burgesses and the Mikesells, Newworld is estopped from raising the statute of frauds to defeat the agreement.

Newworld also challenges the district court's order specifically enforcing the oral contract which required Newworld to convey title to the thirty-foot parcel to the Mikesells. Newworld claims that specific performance was improper because the essential terms of the oral agreement were not definite and certain. We disagree.

■ It is clear from the record that the evidence presented at trial demonstrated the essential terms of the contract with definiteness and certainty. The actual parties to the agreement testified that they agreed to sell and purchase the eastern thirty feet of the Burgesses' lot for $50 a front foot, for a total of $1,500. The description of the land was certain based on the uncontradicted testimony of the contracting parties and the evidence regarding their actions with respect to the thirty-foot parcel. After the second $600 payment by the Mikesells, the Burgesses gave the Mikesells a receipt which stated who the parties were and that the $1,200 thus received was in payment for the thirty-foot parcel, leaving a balance of $300 to be paid. Based on the evidence in the record, the

district court had clear and convincing evidence showing who the parties to the contract were, what land was involved, and how much money was to be paid for the land. Accordingly, the district court did not err in concluding that Newworld was estopped from raising the statute of frauds to avoid enforcement of the oral contract between the Burgesses and the Mikesells, and the district court's order that the agreement be specifically enforced was proper. *Hoffman v. SV Co.*, 102 Idaho 187, 191, 628 P.2d 218, 222 (1981) (satisfaction of the doctrine of part performance entitles purchaser to specific performance).

■ We also uphold the result of the district court's decision under a theory of constructive trust. *Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984) (appellate court may affirm result of lower court's judgment on legal theory different from one employed by the lower court).

Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title..... If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner.

*Hanger v. Hess*, 49 Idaho 325, 328, 288 P. 160, 161 (1930).

In this case, all of the elements which warrant imposition of a constructive trust are met. The district court found the following with respect to Rockland Judd's conduct and representations:

77. The statements made by Judd that he "would take care" or that he "would handle" the deal with Mikesells were made by Judd knowing that Bur-

gesses were concerned about the interest of Mikesells. The statements were made with the intent to mislead and deceive Burgesses to prevent and preclude the insertion of a written exclusion as to the parcel in question purchased by Mikesells in the deed of conveyance to Judd.

78. Burgesses were damaged by the statements of Judd in that they executed a warranty deed to Judd, on behalf of Newworld, which reflected the condition of the title as being free and clear, when in fact it was at all times Burgesses' intention that the interest of Mikesells be protected by conveyance.

These findings were amply supported by substantial competent evidence. The Burgesses, Ed Burgess, Ed Burgess' wife, Larry Roberts, and a disinterested party named Gary Lynch, all testified that they had numerous conversations with Rockland Judd concerning the Mikesells' interest in the disputed parcel prior to Newworld's purchase of the Burgesses' property, and that Judd stated at the time of closing that there was no need to include a written exclusion with regard to the thirty-foot parcel in the deed from Burgesses to Newworld, because he would take care of the situation. The trial court further found that if Judd had not made this fraudulent representation to the Burgesses, the Burgesses would not have conveyed title to the disputed parcel to Newworld. Because Newworld obtained legal title to the disputed parcel by fraud, equity impresses "a constructive trust upon the property in favor of the [Mikesells] who [are] in good conscience entitled to it, and who [are] considered in equity to be the beneficial owners." *Hanger*, 49 Idaho at 328, 288 P. at 161. The findings and result obtained by the trial court are in perfect accord with the doctrine of constructive trust. In essence, the trial court found that the Mikesells were the equitable owners of the parcel, and because Newworld was found to be wrongfully possessed of the legal title to the disputed parcel, Newworld was appropriately ordered to convey that title to the Mikesells, the rightful owners. We find no error in the trial court's judgment and order.

## 2. *Admission of Parol Evidence Regarding the Terms of Sale between Newworld and the Burgesses.*

Newworld also argues that the district court erred in allowing witnesses to testify regarding Rockland Judd's representations that he would honor the oral contract between the Burgesses and the Mikesells by conveying title to the Mikesells once the title was cleared. Newworld asserts that, contrary to the parol evidence rule, this evidence altered the written terms of the deed conveyed by the Burgesses, which stated that Newworld would receive clear title to the property conveyed, including the disputed thirty-foot parcel.

■ Newworld's argument overlooks the rule that agreements and communications prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish fraud. *Tusch Enterprises v. Coffin*, 113 Idaho 37, 45 n. 5, 740 P.2d 1022, 1030 n. 5 (1987). The parol evidence rule does not apply to averments of fraud, misrepresentation, mutual mistake or other matters which render a contract void or voidable. *Id.*

In *Thomas v. Campbell*, 107 Idaho 398, 690 P.2d 333 (1984), the trial court precluded admission of parol evidence offered by one party to the transaction to show that the representations of the other party induced them into the transaction. On appeal, the Supreme Court stated:

> Fraud in the inducement is always admissible to show that representations by one party were a material part of the bargain. Hence, the trial court erred in ruling that the parol evidence rule would preclude admission of evidence which the Thomases offered to establish representations allegedly made fraudulently with the purpose of inducing them into the transaction.

*Thomas*, 107 Idaho at 402, 690 P.2d at 337 (citations omitted). In this case, the trial judge did not err, but properly allowed the admission of parol evidence to establish the fraudulent representations of Rockland Judd which he made for the purpose of inducing the Burgesses into the transaction.

## 3. *Reformation of the Deed between the Burgesses and Newworld to Exclude the Disputed thirty-foot Parcel.*

In their pleadings, the Burgesses requested reformation of the deed they granted to Newworld, claiming that reformation was justified on the grounds of mutual mistake. In conclusion of law # 18, the district court stated:

> The representations made by Rockland Judd to Melrose and Berniece Burgess, as well as to Ed Burgess prior to closing, and the representations made by Rockland Judd to Melrose and Berniece Burgess, as well as to Ed Burgess and Larry Roberts at the time of closing, were fraudulent and inequitable and were made with the intent to induce the Burgesses to refrain from incorporating into the deed of conveyance, which was executed by Melrose and Berniece Burgess, an exclusion as to the Mikesells' thirty (30) foot parcel. Such representations constitute inequitable conduct justifying reformation.

Newworld contends that the district court erred in reforming its deed from the Burgesses to exclude the thirty-foot parcel because the evidence did not support a finding of mutual mistake, as alleged by the Burgesses. Newworld also claims that reformation was inappropriate based on fraud because the Burgesses did not assert a claim or defense of fraud in their pleadings.

■ It is clear from the conclusion of law quoted above that the trial court reformed the deed based on the fraudulent representations of Newworld, not on the ground of mutual mistake alleged by the Burgesses. "When fraud induces a variance between a written contract and the agreement between the parties, the latter will prevail and the trial court is empowered to reform the written instrument to conform to the agreement." *Nab v. Hills*, 92 Idaho 877, 883, 452 P.2d 981, 987 (1969) (quoting *McKelvie v. Hackney*, 58 Wash.2d 23, 360 P.2d 746 (1961)). In this case, the trial court found that the fraudulent representations of Rockland Judd induced a vari-

ance between the written deed and the agreement of the parties. That finding is supported by substantial competent evidence and will not be disturbed. Based on that finding the trial court had authority to reform the deed to conform to the agreement actually reached between the Burgesses and Judd.

Newworld argues that pursuant to I.R.C.P. 9(b) the Burgesses were required to plead the circumstances constituting misrepresentation with particularity, and that their failure to plead misrepresentation at all precluded the district court from finding fraud on the part of Newworld. I.R.C.P. 15(b), however, provides:

> When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Pursuant to this rule, the Supreme Court has held that where a theory of recovery is tried fully by the parties, the court may base its decision on that theory and deem the pleadings amended accordingly. *M.K. Transport v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980). Failure to amend the pleadings to include issues tried by the express or implied consent of the parties does not affect the trial court's findings on those issues. *Watson v. Idaho Falls Consol. Hosps.*, 111 Idaho 44, 48, 720 P.2d 632, 636 (1986). The Supreme Court has applied this rule to actions where the issues of fraud and mistake have been litigated, though not raised by the pleadings. *C.I.T. Corp. v. Hess*, 88 Idaho 1, 395 P.2d 471 (1964) (fraud); *Collins v. Parkinson*, 96 Idaho 294, 527 P.2d 1252 (1974) (mistake).

The determination of whether an issue not raised by the pleadings has been tried by consent of the parties is within the discretion of the trial court and such determination will be reversed only when that discretion has been abused. *Smith v. King*, 100 Idaho 331, 335, 597 P.2d 217, 221 (1979). In this case it is clear that Newworld had notice of the facts and circumstances surrounding the Burgesses' assertions of misrepresentation, and the issue was fully litigated by the parties at trial. To reverse the district court's finding of misrepresentation on the procedural technicality argued by Newworld would be contrary to the very purposes of Rule 15, which are:

> First, to allow the best chance for each claim to be determined on its merits rather than on some procedural technicality; and, second, to relegate pleadings to the limited role of providing parties with notice of the nature of the pleader's claim and the facts that have been called into question.

*Clark v. Olsen*, 110 Idaho 323, 326, 715 P.2d 993, 996 (1986). Because the issue of misrepresentation was fully litigated with the consent of the parties, the district court did not abuse its discretion in treating that issue as though it had been properly pled. Accordingly, we affirm the district court's finding of misrepresentation as well as its order to reform the deed based on that misrepresentation.

4. *The District Court's Finding that Ed Burgess and Land Title were not Negligent, and that Land Title was not in Breach of its Contract of Title Insurance with Newworld.*

Newworld also asserts that the district court erred by not finding that Ed Burgess and Land Title were negligent and that Land Title was in breach of its Contract of Title Insurance. Newworld's arguments on this issue rest completely on the false assumption that Newworld was unaware of the Mikesells' interest in the disputed parcel at the time of closing, that the parties never discussed the Mikesells' interest in the thirty-foot parcel during the closing, and that Judd never fraudulently represented that he would take care of conveying title to the Mikesells. Because we uphold the findings of the trial court as being supported by substantial competent evi-

dence, and because Newworld's arguments are based on factual assumptions which directly contradict the trial court's findings, Newworld's arguments on this issue are unfounded, and we reject them.

Other assignments of error raised by Newworld have been rendered moot by the views expressed herein, and will not be discussed. The judgment of the district court with respect to the issues raised by Newworld is affirmed.

5. *Availability of Punitive Damages against Newworld.*

In their complaint, the Mikesells requested $10,000 in punitive damages against Newworld. In its findings and conclusions the trial court concluded that the Mikesells could not be awarded punitive damages because they had failed to comply with the procedural requirements of I.C. § 6-1604(2), which provides in part as follows:

> (2) In all civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages. However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages.

Contrary to the statute, the Mikesells' complaint contained a prayer for relief seeking punitive damages. Newworld never moved to strike the improper claim for punitive damages, and the Mikesells did not file a pretrial motion for a hearing to amend their complaint to include a claim for punitive damages, as their complaint already contained such a claim.

It is clear from the record that at the time of trial neither the court, nor either of the attorneys for the Mikesells or Newworld, were aware of the provisions of I.C. § 6-1604(2). During the trial, a question arose as to the order of proof regarding the award of attorney fees and punitive damages. The Mikesells suggested that evidence on those issues be presented in a hearing subsequent to the trial on the substantive issues. In response, counsel for Newworld stated that while a secondary hearing as to attorney fees would be appro-

priate, he believed that any evidence regarding punitive damages should be submitted during the trial. ("Your Honor, I think if its going to be submitted, it needs to be submitted now as to proof. I don't want to get into [sic] secondary hearing as to punitive damages.") Even after counsel for the Burgesses and Ed Burgess, who were disinterested parties as to this issue, raised a question about the applicability of I.C. § 6-1604(2), counsel for Newworld did not object to the Mikesells' claim for punitive damages or the evidence submitted by the Mikesells in support of that claim at trial.

■ Newworld could have objected to the Mikesells' claim for punitive damages prior to and during the trial for noncompliance with I.C. § 6-1604(2). However, Newworld did not do so and the issue of punitive damages, though not properly pled, was fully litigated by the parties. As we discussed above, where an issue not properly raised by the pleadings is tried by the implied consent of the parties, it will be treated as if it were properly raised in the pleadings. I.R.C.P. 15(b); *M.K. Transport,* 101 Idaho at 349, 612 P.2d at 1196 (where a theory of recovery is tried fully by the parties, the court may base its decision on that theory and deem the pleadings amended accordingly); *Morford v. Brown,* 85 Idaho 480, 487, 381 P.2d 45, 48 (1963).

By failing to raise a timely objection to the Mikesells' claim for punitive damages, Newworld waived the right to object. Because the issue of punitive damages was fully tried by the parties, the district court should have treated the issue as if it had been properly pled. Therefore, we reverse the district court's conclusion that the Mikesells' failure to comply with I.C. § 6-1604(2) barred their recovery of punitive damages, and we remand for the district court to determine whether an award of punitive damages is warranted in this case.

6. *Attorney Fees on Appeal.*

■ The trial court found that Newworld's claims and defenses were based upon the false testimony of Rockland Judd. We agree with the trial court's conclusion

that a claim or defense based upon false testimony is frivolous, unreasonable and without foundation. For the same reasons, we find Newworld's appeal to be frivolous, unreasonable and without foundation. However, we conclude that while Newworld did not prevail on the issues raised by the Mikesells' cross-appeal, Newworld's defense to that cross-appeal was not frivolous, unreasonable or without foundation. Accordingly, the Mikesells, the Burgesses, Ed Burgess, and Land Title are entitled to their costs associated with the appeal and cross-appeal. The same parties are awarded attorney fees as respondents to Newworld's appeal. The Mikesells and Newworld are each responsible for their own attorney fees resulting from the Mikesells' cross-appeal.

## CONCLUSION

Based on the facts and reasoning set forth above, Newworld's appeal is denied in its entirety, and we reverse and remand with respect to the issue of punitive damages raised in the Mikesells' cross-appeal. Costs and attorney fees are awarded as set forth above, pursuant to I.A.R. 40 and 41.

WALTERS, C.J., and SWANSTROM, J., concur.