39 P.3d 612

Allan HARWOOD, Plaintiff–Respondent,

v.

Katuscha TALBERT, a/k/a Katuscha Lane, a/k/a Katja Lane, Defendant–Appellant.

No. 25210.

Supreme Court of Idaho, Coeur d'Alene, October 2001 Term.

Dec. 28, 2001.

Mitchell Law Office, Coeur d'Alene, for appellant. John T. Mitchell argued.

Stephen M. Ayers, Coeur d'Alene, argued for respondent.

## OPINION ON REHEARING

**The Court's prior opinion dated December 20, 2000, is hereby withdrawn**

WALTERS, Justice.

This case arose from a property dispute between two adjacent landowners regarding the use of a road, located on one owner's property, to access a portion of the other

owner's property. The district court granted partial summary judgment in favor of the claimant, Allen Harwood ("Harwood"), determining Harwood possessed an express easement to use the road. On appeal, we affirm the adjudication of the easement, but we vacate the district court's award of attorney fees to Harwood.

## FACTUAL AND PROCEDURAL BACKGROUND

Allen Harwood purchased parcel 27 of Highland Springs subdivision located near St. Maries, Idaho, in 1991. In 1992, Katuscha Talbert ("Talbert") and her former husband, bought parcels 28, 29, 31 and part of 30, which are adjacent to Harwood's parcel. A private road allows access to the southern portions of Harwood's and Talbert's properties. However, steep ground in the middle of Harwood's property makes it impossible to drive from the southern portion to the northern portion. The northern portion of Harwood's land is only accessible by a road that crosses Talbert's property. The dispute between the parties arises from Harwood's use of the road on Talbert's property. Harwood used this road to access the northern portion of his property from 1991 until 1992 when Talbert installed a locking gate and informed Harwood he had no right to enter her land to use the road.

In 1977, a written easement had been executed between the former adjacent landowners. The easement included a map titled Exhibit A showing the land and the roads that were upon the land at the time. Harwood asserted that the written easement allowed him to use the road in question to access the northern portion of his land. After unsuccessful attempts to resolve the dispute amicably, Harwood filed a declaratory judgment action seeking to establish an express easement across Talbert's land or, in the alternative, an easement by implication, necessity or prescription. Talbert answered pro se, asserting a counterclaim against Harwood for pointing a loaded shotgun at her. The district court dismissed the counterclaim because Talbert had specified the amount of punitive damages in her pleadings, contrary to I.C. § 6-1604. Talbert then retained counsel and filed an amended answer, and a motion for summary judgment contesting the easement.

Following a hearing on Talbert's motion for summary judgment, the district court granted partial summary judgment to Harwood. The district court found that the road in question existed at the time the easement was granted by the developers, therefore, Harwood possessed an express easement to use the road. Talbert filed a motion to reconsider, which the district court denied.

A bench trial was held on May 1-2, 1996, to determine the remaining issues of whether Talbert was entitled to maintain the gate across the road, the extent of the express easement granted to Harwood and the recovery of damages. Following the bench trial, the court determined that Talbert could maintain an unlocked gate across the road, but the gate must be left open during the winter. Although Harwood failed to prove actual damages, the court awarded Harwood one dollar in nominal damages. In addition, the court awarded punitive damages, costs and attorney fees to Harwood.

The district court further ordered Harwood to have the centerline of the access road surveyed in a "reasonably diligent manner" and to submit an amended judgment containing a metes and bounds description of the easement as determined by the survey. Harwood submitted a proposed judgment, which failed to include the metes and bounds description as required by the district court. Talbert filed a notice of appeal. This Court directed that an amended judgment containing the metes and bounds description be entered in order to have an appealable judgment. In July of 1999, the district court entered the proper judgment, and in September 1999, Talbert filed an amended notice of appeal. Following the entry of an order taxing costs, the district court filed the Third Amended Judgment.

Harwood then filed a motion with the district court for additional attorney fees for work related to the survey. The trial court granted Harwood's motion and Talbert filed a second amended notice of appeal to include this ruling.

## ISSUES ON APPEAL

1. Was Talbert's counterclaim properly dismissed?

2. Did the district court err in denying Talbert's motion for summary judgment?

3. Did the district court err in sua sponte granting Harwood partial summary judgment?

4. Was it proper for the district court to award nominal damages to Harwood?

5. Was it proper to award punitive damages against Talbert?

6. Were attorney fees properly awarded to Harwood under I.C. § 12–121?

7. Are either of the parties entitled to attorney fees on appeal?

## DISCUSSION

### I.

### DISMISSAL OF TALBERT'S COUNTERCLAIM

■ Talbert contends that the district court abused its discretion by dismissing her counterclaim. She argues that the district court should not have dismissed her counterclaim for alleging a claim for punitive damages, but rather simply should have stricken the allegation from the pleading. Harwood, in turn, asserts that the district court properly dismissed Talbert's counterclaim since Talbert knew that Harwood did not request a hearing on the motion and Talbert could have requested one. Harwood also submits that Talbert could have raised this issue to the district court, by moving for reconsideration of the dismissal, rather than filing an amended answer without asserting the counterclaim anew, or by bringing the claim by a separate action.

Talbert's counterclaim against Harwood requested punitive damages in the amount of $100,000 for pointing a loaded shotgun at her. Harwood filed a motion to dismiss, or in the alternative, a motion to strike or a motion for sanctions on the basis that the counterclaim had specified the amount of punitive damages in violation of I.C. § 6–1604 and I.R.C.P 9(g). The motion stated that no

oral argument was requested. The following day, the district court dismissed the counterclaim.

Idaho Code § 6–1604 provides that:

In all civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages. However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the pleadings if the moving party establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

I.R.C.P. 9(g) provides that when punitive damages are claimed that no dollar amount or figure should be included beyond a statement that the jurisdictional dollar amount of the controversy is satisfied.

Talbert argues that the district court should have had a hearing on Harwood's motion rather than summarily dismissing the counterclaim. I.R.C.P. 41(b) provides that the defendant, Harwood since this was Talbert's counterclaim, may move for dismissal of an action when the plaintiff, Talbert, has not complied with the rules of civil procedure or any order of the court. We affirm the district court's finding that as a matter of law the counterclaim filed by Talbert was contrary to I.R.C.P. 9(g) and I.C. § 6–1604. Since neither Harwood nor Talbert requested a hearing on the motion, it was not necessary for the district court to hold a hearing on the motion to dismiss. Further, as Harwood points out, Talbert could have filed a motion to reconsider and requested a hearing on that motion.

Talbert also argues that the district court erred in dismissing the entire counterclaim rather than striking the portion of the pleading specifying the punitive damage claim. To support her argument Talbert cites *Mikesell v. Newworld Development Corp.*, 122 Idaho 868, 878, 840 P.2d 1090, 1100 (Ct.App. 1992). In *Mikesell*, the complaint requested $10,000 in punitive damages, however, evidently neither party was aware that I.C.

§ 6–1604 prohibited such a request at the time of the trial and the issue was fully tried. *Mikesell,* 122 Idaho at 878, 840 P.2d at 1100. After the trial, the district court refused to award punitive damages to the Mikesells because of the Mikesells' noncompliance with I.C. § 6–1604(2) and rule 9(g). The Court of Appeals determined that the district court erred in dismissing the punitive damages claim after it had been tried, holding that where an issue is improperly raised in the pleadings but tried by the parties without objection, it will be treated as having been properly raised. *Id.*

This case differs from *Mikesell* in that Talbert's counterclaim was dismissed long before the trial occurred, not after being litigated at trial. Here, Talbert's counterclaim clearly requested punitive damages in her initial pleading and stated the amount requested contrary to I.C. § 6–1604 and I.R.C.P. 9(g).

Talbert raised the counterclaim in the summer of 1995 when she was representing herself pro se. Harwood filed his motion to dismiss the claim, strike the counterclaim or to impose some other sanction for violating I.C. § 6–1604 and I.R.C.P. 9(g). The district judge acted immediately by granting the motion to dismiss the counterclaim. The counterclaim was dismissed early enough that the statute of limitation would not have constituted a bar. The dismissal does not appear to be with prejudice, thus Talbert was free to seek leave to properly re-file her counterclaim for punitive damages without stating the amount requested within, thereby curing the problem. There is nothing in the record to show that Talbert was inhibited from pursuing her counterclaim in another independent action or as a properly pled counterclaim in this case.

Although the district court has the option to strike the portion of the counterclaim that states the amount of the punitive damages requested, the court also has the option to grant a motion to dismiss. We leave that decision within the sound discretion of the trial court. Here, the district court exercised its discretion and dismissed the counterclaim. This Court holds the district court did not abuse its discretion by dismissing Talbert's counterclaim.

## II.

### DENIAL OF TALBERT'S MOTION FOR SUMMARY JUDGMENT

 We turn next to Talbert's contention that the district court erred by denying her motion for summary judgment. The purpose of Talbert's motion was to seek a favorable ruling that there was no express easement. She asserted that a written easement must contain a description of the land sufficient to locate the easement with reasonable certainty, and that the trial court should have ascertained the parties' intent from the document evidencing the easement and considered extrinsic evidence only where the language of the writing is ambiguous.

The pertinent portion of the easement recites:

IN ACCORDANCE WITH EXHIBIT "A" ATTACHED; and their successor and assigns a 60 foot easement for road and utility purposes for ingress and egress, over and across all roads presently existing or heretofore reserved by the grantors herein in deeds executed and placed of record, or already of record within the above described property. Said easement to be for the benefit of and appurtenant to each and every part of the subject legal description.

In support of her motion for summary judgment, Talbert argued that the writing that allegedly showed the easement requires the road to have physically existed at the time the easement was granted and be depicted on the map attached to the easement document. Talbert further argued that even if the road in fact existed, the road was not necessary for Harwood to access his property; therefore, there was no right to the easement. To support these arguments, Talbert claims the road in question was simply a logging trail that may have existed at the time the easement was granted, but was not depicted on the map as a road and was not necessary for ingress and egress to Harwood's property. The map on Exhibit A contains markings that Harwood contended

shows the easement road in question. These markings are a series of segmented, unattached parallel lines (sometimes referred to herein as "the dotted line"). Talbert disputed that the lines showed a road because other roads on the map are shown by continuous, unsegmented parallel lines. Accordingly, she argued that the lines claimed by Harwood to evidence the easement road could only have been an unimproved logging trail.

Talbert additionally asserts that the district court erred by using extrinsic evidence (affidavits and deposition testimony) to determine the easement when the written document describing the easement is unambiguous.

The district court addressed whether the disputed markings on the map showed a road and held that the record indicated that a dirt road existed at the time the easement was created. The district court further determined there was no genuine issue of fact regarding the existence of the road because the easement, Exhibit A, and three affidavits all indicated the road existed. After having reviewed the written easement, the district court considered the extrinsic evidence (the affidavits and deposition testimony) to ascertain the intent of the developers of the land as to the "road."

This Court holds that the district court did not err in considering extrinsic evidence to determine the intent of the drafters of the written document evidencing the alleged easement. We uphold the district court's conclusion that an express easement existed in favor of Harwood, and therefore affirm the district court's order denying Talbert's motion for summary judgment.

## III.

### SUMMARY JUDGMENT IN FAVOR OF HARWOOD

Talbert asserts that the district court erred when it granted partial summary judgment to Harwood declaring a valid easement existed and that the roadway was in existence at the time of the granting of the easement. Talbert argues the district court committed "legal error" by *sua sponte* granting summary judgment to Harwood because (1) Talbert did not put the issue of the existence of the road in her motion for summary judgment and (2) Harwood did not file his own motion for summary judgment. Harwood, in turn, argues that Talbert's motion for summary judgment put all issues on the table. Further, Harwood asserts Talbert waived her right to claim the existence of the road was not at issue by arguing against the road's existence in her pretrial motions.

In an appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by the district court in passing upon a motion for summary judgment. *Baxter v. Craney,* 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). Summary judgment is appropriate if the pleadings, affidavits, and discovery documents on file with the court, read in a light most favorable to the non-moving party, demonstrate no material issue of fact such that the moving party is entitled to a judgment as a matter of law. *See id.;* I.R.C.P. 56(c). The burden of proving the absence of material facts is upon the moving party. *See Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 452 P.2d 362 (1969).

In this case, partial summary judgment was granted to Harwood, the non-moving party. This Court has determined "[s]ummary judgment may be rendered for any party, not just the moving party, on any or all the causes of action involved, under the rule of civil procedure" thus allowing trial courts flexibility in determining the form of relief granted in summary judgment orders. *Brummett v. Ediger,* 106 Idaho 724, 726, 682 P.2d 1271, 1273 (1984) (citing I.R.C.P. 56(a), (b), (c), (d)).

The district court may grant summary judgment to a non-moving party even if the party has not filed its own motion with the court. A motion for summary judgment allows the court to rule on the issues placed before it as a matter of law; the moving party runs the risk that the court will find against it, as in this case.

In instances where summary judgment is granted to the non-moving party, this

Court liberally construes the record in favor of the party against whom summary judgment was entered. *Allen v. Blaine County,* 131 Idaho 138, 141, 953 P.2d 578, 580 (1998); *Post Falls Trailer Park v. Fredekind,* 131 Idaho 634, 637, 962 P.2d 1018, 1021 (1998). "The party against whom the judgment will be entered must be given adequate advance notice and an opportunity to demonstrate why summary judgment should not be entered." *Idaho Endowment Fund Inv. Board v. Crane,* 135 Idaho 667, 671, 23 P.3d 129, 133 (2001) (citing *Mason v. Tucker and Assoc.,* 125 Idaho 429, 432, 871 P.2d 846, 849 (Ct. App.1994)); *see also Kelly v. Hodges,* 119 Idaho 872, 876, 811 P.2d 48, 52 (Ct.App.1991). It is also true that a district court may not decide an issue not raised in the moving party's motion for summary judgment. *Thomson v. Idaho Ins. Agency, Inc.,* 126 Idaho 527, 530, 887 P.2d 1034, 1037 (1994) (holding non-moving party is not required to respond to issues not raised by the moving party even if the non-moving party ultimately has the burden of proof at trial).

▋ In this case, Talbert filed a motion for "summary judgment against Plaintiff on all Plaintiff's claims for relief set forth in Plaintiff's Complaint." Talbert, however, asserts that she was only seeking summary judgment as to the issue of the legal significance of the lines marked on Exhibit A (i.e., whether the lines in question on Exhibit A depicted a road at all) and that the issue of the existence of the road was not raised because she knew there was conflicting evidence on that dispute. Further, Talbert asserts she was denied the opportunity to raise factual and legal defenses as to the existence of the easement and "road" because she had no notice that the district court was considering this issue on her motion for summary judgment. She claims that her factual defense was that the "road" did not exist in its entirety when the easement was created and it "petered out" before it reached Harwood's property. The legal defenses Talbert would have asserted were that the "road" was not a road because the easement's Exhibit A map showed a dotted line rather than a solid line like the other roads on the map, and the easement was for an access when Harwood had access to his property through another

road. Talbert also claims the district court erred by failing to give her notice that it was considering the issue of the existence of the road so she could raise her defenses as required by *Mason. See Mason,* 125 Idaho at 432, 871 P.2d at 849.

The district court found the legal significance of the dotted line on the map was that the "road" was in fact a road in existence at the time of the creation of the easement and that the dotted line merely indicated the road was unimproved, not that that the road did not exist. The district court additionally found an express easement existed because the "road" in question was a road for purposes of the easement and was in existence at the time the easement was created.

Talbert's assertion that her motion only raised the legal significance of the dotted line in Exhibit A is flawed. Her motion and supporting memorandum filed with the district court challenged all of the claims in the plaintiff's complaint. Although the motion stated "the issue to be decided, is the legal significance of the 'dotted line' in the ... easement," the motion went on to contest all of the bases (express easement and easement by implication, necessity or prescription) raised by Harwood's complaint. Talbert's motion for summary judgment essentially called Harwood's entire case into question and ultimately asked the district court to dismiss the case.

By challenging Harwood's entire case, Talbert made the existence of the road at the time of the creation of the easement an issue properly before the district court. *Mason* requires a notice sufficient to alert a party to present evidence to show why summary judgment should not be entered against him. Talbert had such notice. The district court found that the road in question existed at the time of creation of the easement because Talbert raised and addressed this issue in her motion for summary judgment and supporting memorandum.

This Court affirms the district court's grant of partial summary judgment to Harwood by finding that the "road" existed at the time the easement was created.

## IV.

### AWARD OF NOMINAL DAMAGES

■ Talbert complains the award of nominal damages had nothing to do with the actual damages asserted and was based upon the district court's perception that Talbert's refusal to allow Harwood access over her property was without any reasonable basis in fact.

Although there were no actual damages proven at trial, the district court awarded Harwood one dollar in nominal damages. In its memorandum opinion, the district court discussed all of the damages together in one section, determining that Talbert's conduct was unreasonable and that her defenses were without a reasonable basis.

■ Generally, nominal damages are awarded for the infraction of a legal right to demonstrate, symbolically, that the plaintiff's person or property have been violated. *Pierson v. Brooks*, 115 Idaho 529, 537, 768 P.2d 792, 800 (Ct.App.1989) (citing C. McCORMICK, THE LAW OF DAMAGES, § 20 (1935)). In this case, Harwood was denied access to a road he was rightfully entitled to use. Although he did not suffer any actual damages, his legal right had been violated. The district court's award of nominal damages was not based on the unreasonableness of Talbert's conduct, but upon the violation of Harwood's legal right, thus entitling him to nominal damages.

This Court holds that the district court did not err in awarding nominal damages to Harwood.

## V.

### AWARD OF PUNITIVE DAMAGES

■ Talbert argues the district court abused its discretion by awarding punitive damages to Harwood. Talbert claims this award of punitive damages was improper because she did not commit a bad act or have a bad state of mind. Further, Talbert asserts that Harwood suffered no actual damages since he was not injured by her putting up the gate. Harwood contends that there is ample evidence in the record to show that Talbert was aware of the easement yet continued to deny knowledge of the easement. Harwood was also not allowed to access the northern portion of his property and asserts he was injured by Talbert's actions. Neither of the parties is contesting the amount of the punitive damage award.

■ This Court routinely applies an abuse of discretion standard when reviewing a trial court's decisions regarding punitive damages. *Polk v. Larrabee*, 135 Idaho 303, 314, 17 P.3d 247, 258 (2000) (citations omitted). To determine whether an abuse of discretion has occurred, this Court applies the three-factor test. The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Baxter v. Craney*, 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

■ Punitive damages are not favored in law and should be awarded in only the most unusual and compelling circumstances. *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992). The circumstances under which an award of punitive damages is allowed are set forth in Idaho Code § 6–1604(1):

> In any action seeking the recovery of punitive damages, the claimant must prove, by a preponderance of the evidence, oppressive, fraudulent, wanton or outrageous conduct by the party against whom the claim for punitive damages is asserted.

■ "In Idaho, nominal damages may support a punitive award. The foundational requirement is merely that some legally protected interest be invaded." *Crosby v. Rowand Machinery Co.*, 111 Idaho 939, 944, 729 P.2d 414, 419 (Ct.App.1986) (citations omitted). "There is no reason why nominal damages, which also require a showing that a legally protected interest has been invaded, cannot fulfill the requirement." *Davis v.*

*Gage,* 106 Idaho 735, 682 P.2d 1282, 1286 (Ct.App.1984). Although the imposition of nominal damages is unlikely to have any deterrent effect, an assessment of punitive damages takes away the incentive for engaging in bad conduct by making such conduct unprofitable. *Id.*

The district court awarded punitive damages to Harwood in an amount equal to one-half of the cost of the survey of the easement. The district court found "the defendant's conduct is an extreme deviation from reasonable standards of conduct, performed by the defendant with an understanding for its likely consequences, thus entitling plaintiff to punitive damages." To support this conclusion, the district court found that the road clearly existed at the time the parties acquired their respective properties and that Talbert was placed on notice of the easement. Further, the district court found that Talbert knew, or should have known, the validity of Harwood's claim, yet she continued to deny it. The court observed: "Moreover, certain evidence at trial, including [Talbert's] testimony, seriously compromised her credibility."

The district court found Talbert's "testimony unpersuasive and, in many respects, difficult to accept." The district court also found that during the course of the trial Talbert presented evidence "which was conflicting, inconsistent, and, in some instances, of highly dubious veracity."

The record indicates that Talbert's oppressive conduct was sufficient for punitive damages to be assessed against her. There is sufficient evidence for the district court to find that Talbert testified falsely and that she physically altered an exhibit to indicate that she had no knowledge of the easement. The evidence overwhelmingly showed that Talbert was aware of the easement. This is sufficient to constitute oppressive conduct in an effort to commit fraud on the court, which justifies the award of punitive damages.

This Court affirms the district court's award of punitive damages because the record does not support that the district judge abused his discretion.

## VI.

## AWARD OF ATTORNEY FEES

Talbert asserts that the district court erred by awarding attorney fees to Harwood under I.C. § 12–121. This statute permits a trial court to award attorney fees to the prevailing party in any civil action when the court finds from the facts presented to it, "that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e). Here, the district court found that Talbert's defense of the case was unreasonable.

Talbert challenges the district court's conclusion, and points out that she prevailed against Harwood on his claims for actual damages, on issues of the necessity of the gate across the easement and concerning the non-existence of any easement across the upper Ridge Road. This argument has merit.

In his complaint, Harwood asserted that he was entitled to $10,000 in actual damages, as well as to the declaration of an easement. The district court found that Talbert improperly denied Harwood access to the road, but that no evidence was presented by Harwood to support an award of actual damages. At oral argument on this appeal, Harwood's attorney conceded they were unable to prove any damages, and explained that the $10,000 figure was alleged to gain the jurisdiction of the district court rather than the magistrate's division. Consequently, we conclude that Talbert successfully defended against Harwood's $10,000 claim for damages when no actual damages were awarded to Harwood by the district court. It appears that Talbert's case was not entirely defended unreasonably.

The issue of the gate was also a fairly debatable issue. Talbert desired to have a locked gate across the easement and to allow Harwood to have a key to the lock. Harwood requested that the use of the gate be enjoined completely. The district court determined that it would be proper for Talbert to have an unlocked gate across the easement, which was to remain open during the winter months. Talbert raised a legitimate, triable fact to the district court thereby pre-

venting her defense from being completely unreasonable.

We hold that Talbert's case was not completely defended unreasonably, without foundation or frivolously. We therefore vacate the award of attorney fees granted by the district court to Harwood.

In addition, Harwood has requested attorney fees on appeal pursuant to I.C. § 12–121 and I.A.R. 41. Because both parties have prevailed on appeal in part, no costs or fees will be awarded.

### CONCLUSION

This Court affirms the district court's order granting partial summary judgment to Harwood and holds that the district court properly considered extrinsic evidence in denying Talbert's motion for summary judgment. This Court further affirms the district court's dismissal of Talbert's counterclaim and the awards of nominal and punitive damages. We vacate the district court's award of attorney fees to Harwood.

Because of the mixed result, no costs or fees are awarded to either party on appeal.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, CONCUR.