682 P.2d 1271

**William E. BRUMMETT,**
**Plaintiff-Respondent,**

**v.**

**Ardean J. EDIGER, Roy Gerhard, and**
**Mountain View Flying Association,**
**Defendants-Appellants.**

**No. 14368.**

Supreme Court of Idaho.

May 29, 1984.

Donald Lojek of Parkinson, Lojek & Penland, Chartered, Boise, for defendants-appellants.

Gerald L. Weston of Gigray, Miller, Downen & Weston, Caldwell, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment essentially in favor of plaintiff, who sought the dissolution of a flying association, sale of its assets, and distribution of the proceeds. We affirm in part, reverse in part, and remand.

In November 1977, Ediger, Gerhard, Southerland and Stewart bought in equal shares an airplane from Treasure Enterprises and then formed the Mountain View Flying Association, of which they were the only members. The association leased back the airplane to Treasure, who offered it for rental to qualified members of the general public at a rate of approximately $80 per hour. Members of the association flew the plane for a rate of $35 hourly. Treasure paid the association $35 for each hour the plane was flown. The leaseback arrangement with Treasure did not provide sufficient income to meet the obligations of the association, and hence members paid dues to the association, which were initially $250 per month and were later increased to $350 per month. The members of the association claimed the plane as an investment credit and also depreciated the plane on their income tax returns.

After a short time, Stewart felt the arrangement was too expensive and decided to terminate his participation. Stewart found a buyer, Brummett, for his interest at a price of $2,625. Stewart testified that he believed there to be no conditions upon his right to alienate his share, and that he thought the others approved of the sale. Ediger's and Gerhard's version of the sale was that it was conditional upon their meeting and approving of Brummett. Brummett testified he understood that Stewart had cleared the sale with the other association members. In any event, Brummett did pay to Stewart the $2,625 for Stewart's share.

What were evidently personality and plane scheduling problems developed almost immediately with Brummett. A special meeting of the association was called, at which only Ediger and Gerhard were present, "for the purpose of deciding whether Mr. William Brummett should be a partner of Mt. View Flying Assn." The minutes of the meeting reflect an agreement that Brummett "should not be a permanent member of Mt. View Flying Assn. and that he should be bought out for the amt. of money that he had invested in the airplane as soon as a compatable [sic] partner could be found." Southerland later agreed to this action. Ediger informed Brummett that the association would not accept him as a member, which Brummett deemed acceptable, providing he got his money back. A buyer for the Brummett interest was sought, but none was found. The association thereafter agreed that, until a buyer was found, Brummett would be extended the privileges incidental to membership. Brummett testified, however, that he was never admitted as a member. Nevertheless, Brummett paid dues to the association until February 1979, and Brummett clearly exercised membership privileges by use of the airplane until at least that time.

In July 1979, Brummett filed the present complaint against the defendants, seeking

a dissolution of "partnership" and the winding up of its affairs, including the sale of the airplane and distribution of the proceeds to the partners. Defendants answered, denying that the association was a partnership and counterclaiming for alleged arrearages owing from Brummet for upkeep of the airplane. Defendants moved for summary judgment, which was partially granted against plaintiff, the court holding that there was no partnership between the parties, but that the Mountain View Flying Association constituted a joint venture. The court found that Brummett had been expelled from the association and was entitled to his share of the net value of the assets, less any indebtedness owed by him to the association. A hearing was held on the question of damages, following which the court found that Brummett had been expelled as of May 1, 1978, ordered that Brummett be paid the value of his equity in the association as of July 1, 1978, and gave the association 60 days within which to sell Brummett's interest or have the association dissolved.

Defendants appeal, asserting that the court erred in finding a joint venture, in determining the date at which Brummett was expelled, and in failing to hold that the defendants were entitled to reimbursement from Brummett for his unpaid share of the expenses of maintenance and upkeep of the aircraft.

■ Although Brummett had pleaded the existence of the partnership, the trial court ruled that no partnership existed and found rather that the parties' relationship constituted a joint venture. Defendants-appellants argue that the court should have dismissed the case, since Brummett did not meet his burden of proving a partnership. It is admitted that any such dismissal might be without prejudice and that Brummett would then simply refile his complaint, alleging a joint venture. We see no reason for such a procedural game of hopscotch, and find no error in the trial court's treating the pleadings as amended and ruling on the relationship of the parties. I.R.C.P. 15(b) provides:

"**Rule 15(b). Amendments to conform to the evidence.**—When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. *Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time,* even after judgment; but *failure so to amend does not affect the result of the trial of these issues.* If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, *the court may allow the pleadings to be amended and shall do so freely* when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence." (Emphasis added.)

■ Summary judgment may be rendered for any party, not just the moving party, and on any or all of the causes of action involved, under the rules of civil procedure. I.R.C.P. 56(a), (b), (c), (d). Flexibility in designing summary judgment orders is clearly the intent of the drafters of the civil rules. As stated in I.R.C.P. 1(a), "These rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding." The comments and finding of the trial court were certainly reasonable in stating:

"In a purely abstract manner, the motion for summary judgment would require that the Court simply determine whether or not the relationship between the parties is that of partners. However, because the defendants are affirmatively alleging that the arrangement was a tenancy in common and in their brief in

support of the motion for summary judgment, the defendants suggest that perhaps the parties' arrangement is merely an unincorporated association or is a joint venture, it would appear appropriate that the Court attempt to determine just what type, legally, the relationship appears to be."

The action of the trial court in refusing to dismiss the case at summary judgment is affirmed.

The trial court found that, under I.C. § 53–306, a partnership requires activity constituting a business for profit. He then found that the evidence, aside from the "business profit" evidence, was insufficient to satisfy the burden of showing a business partnership. However, the court did find, as a matter of law, that all of the requirements of a joint venture were present, citing *Stearns v. Williams*, 72 Idaho 276, 284–285, 240 P.2d 833, 838–839 (1952):

> "Whether a relation of joint adventurers exists is primarily a question of fact for the trial court to determine from the facts and the inferences to be drawn therefrom. [Citations.]
>
> "It is immaterial in whose name the property is acquired in a joint venture, as one holding title is a trustee for those who are so engaged in the joint enterprise. [Citations.]
>
> "To constitute a joint adventure the parties may combine their property, money, efforts, skill or knowledge in some common undertaking, and their contribution in this respect need not be equal or of the same character, but there must be some contribution by each joint adventurer of something promotive of the enterprise. [Citations.] [E]ven though one adventurer owns all of the property used in the joint adventure, this is not conclusive in determining whether such relationship exists. [Citation.]
>
> "A contract of joint adventure need not be expressed but it may be implied, in whole or in part, from the conduct of the parties...; direct testimony or documents are not essential. [Citations.] Again, even though the details of such joint adventure were shown by indefinite and uncertain testimony, this does not preclude finding that such a joint adventure existed from their acts and conduct, and from the testimony and the inferences that might reasonably be drawn therefrom. [Citations.]
>
> "A joint adventure is generally a relationship analogous to but not identical with a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit."

*Accord Church v. Roemer*, 94 Idaho 782, 498 P.2d 1255 (1972); *Lepel v. Lepel*, 93 Idaho 82, 456 P.2d 249 (1969).

■ We hold that the trial court's characterization of the Mountain View Flying Association as a joint venture was not error. The trial court indicated that the parties here were conducting a "single business enterprise" as contrasted with an ongoing business endeavor, and found that a profit motive was sufficiently disclosed by the leaseback arrangements, together with defendants' treatment of the aircraft for income tax purposes.

■ Defendants-appellants assert that the evidence is insufficient to support the holding of the trial court that Brummett was expelled from the association on May 1, 1978 and was entitled to be reimbursed for his equity as of that date. We agree. It is clear that Brummett has not been reimbursed for his investment. It is also clear that Brummett continued to utilize the plane following May 1, 1978, and probably until March of 1980. The record is unclear as to whether that usage of the aircraft constituted a privilege incidental to membership.

There is controverting testimony that Ediger made the plane unavailable to Brummett in April or May of 1979, and, on the other hand, testimony that such was not intentional and in any event was for less than one week. On several occasions, Brummett voiced objections to the plane's being piloted by Gerhard, who Brummett felt was unqualified. In fact, Gerhard did crash the plane in August 1978, but it was

insured and the damage was repaired. Although Brummett argues that he did not have the same privileges and control as to the aircraft as other members of the association had, it is clear he did have access to the airplane at the price of $35 per hour, *i.e.*, at the club rate, until March 1980. The plane was available to members of the general public, only upon payment of $80 per hour.

We are, however, unable to determine from the record before us is whether the $35 rate charged Brummett resulted in expense and detriment to the association. The record is deficient in several particulars. It is inadequate as to the effect of Brummett's being charged a rate of $35 per hour for the usage of the plane. Under the leaseback arrangement the association received $35 per hour from Treasure whenever the plane was used by a member of the general public at a rate of $80 per hour. When members of the association flew the plane and paid Treasure a rate of $35 per hour, the association likewise received that $35 per hour. The record is unclear as to the disposition of the moneys charged Brummett for use of the plane.

We discern that Brummett did not pay association dues. Such dues were presumably used to pay for the aircraft's maintenance and other expenses, where such expenses exceeded the association's rental income received from Treasure. However, the record is not specific as to how these moneys were spent. Likewise, the record is confusing as to whether the $35 per hour fee charged Brummett and the members was with or without fuel.

We reverse the holding of the trial court that Brummett was expelled from membership on May 1, 1978, and the holding of the trial court that Brummett be reimbursed for the value of his equity as of that date. Upon remand, the court is instructed to retry and determine the date at which Brummett's privileges of membership in the association were terminated and the value of the association assets as of that date. Brummett should be awarded his share of those assets, less any moneys due the association on its counterclaim for Brummett's nonpaying utilization of the privileges of membership. No costs or attorney's fees allowed.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.