811 P.2d 48

**Charles B. KELLY,**
**Plaintiff–Appellant–Cross**
**Respondent,**

v.

**Jolene Rae HODGES,**
**Defendant–Respondent–Cross**
**Appellant.**

**No. 18110.**

Court of Appeals of Idaho.

March 26, 1991.

Weinpel, Woolf & Combo, Idaho Falls, for plaintiff-appellant-cross respondent. Marc J. Weinpel argued.

Gardner & Higgins, Idaho Falls, for defendant-respondent-cross appellant. Kent A. Higgins argued.

WALTERS, Chief Judge.

Charles Kelly filed an action against Jolene Hodges seeking to enforce a written "Real Estate Purchase and Sale Agreement" (the Agreement), allegedly modified by an oral agreement to extend the closing date. Based on the statute of frauds, the district court granted Hodges' motion to dismiss Kelly's complaint and awarded damages and attorney fees. For the reasons explained below, we vacate the judgment and remand the case to the district court for further proceedings.

I

The relevant facts are as follows. In February, 1988, Hodges responded to an advertisement for the rental or sale of townhouse apartments owned by Kelly. When she approached Kelly, he informed her that she could rent one of the apartments for $600 per month or purchase one for $625 per month. On February 18, 1988, Kelly and Hodges entered into the Agreement, which provided a closing date of April 1, 1988, and was contingent upon Hodges' qualifying for FHA approved financing. The parties agreed that, in the meantime, Hodges could occupy the apartment and pay rent to Kelly.

The subject apartment was habitable but not completely finished. Kelly installed hardwood floors, gray formica countertops, and gray linoleum, which were selected by Hodges.[1] Hodges applied for financing through a lending institution, which submitted her application to FHA for approval.

On April 12, 1988, FHA notified the lender that Hodges' loan application was rejected. Soon thereafter, Hodges met with the bank's loan officer for the purpose of identifying and resolving the problems with her creditworthiness. The loan officer indicated that her application had been rejected, in part, because Hodges had not maintained her current level of income for a minimum period of eight weeks, and in part, as a result of Hodges' financing on certain other debts. Hodges immediately set out to refinance the debts which the loan officer had indicated to be a problem. However, in early June, Hodges notified Kelly of her intention to vacate the premises. She paid the June rent and left the apartment on June 26th. Ten days later, the lending institution resubmitted Hodges' application to FHA and obtained approval for the loan, on terms identical to those contemplated under the Agreement.

Kelly filed this action seeking specific performance of the Agreement, and, in the alternative, to recover his damages. He alleged that he and Hodges had an oral agreement waiving the April 1st closing date in order to allow Hodges to obtain the necessary financing, and that Hodges' actions, undertaken to improve her creditworthiness, evidence the existence of that oral agreement. In her answer, Hodges denied that she agreed to an extension, and raised the statute of frauds as an affirmative defense to the alleged oral extension agreement. She also asserted a counterclaim, under the refund provision of the Agreement, to recover the $500 earnest money paid to Kelly.

Hodges moved, on summary judgment, to dismiss Kelly's complaint, claiming that any oral modification extending the closing date beyond April 1, 1988, was barred under the statute of frauds. In ruling on the motion, however, the district court declined to adopt the position advanced by Hodges. Instead, the court observed that the Agreement, presented as an offer by Hodges to purchase the property from Kelly, did not

---

1. The record is unclear whether Kelly's installations were done as performance of an obligation under the Agreement, or whether—as contended by Hodges—they were accomplished pursuant to the interim rental agreement between the parties.

contain Kelly's signature in the appropriate place on the document to evidence Kelly's acceptance of the offer. Because both parties had not signed the Agreement in their respective capacities as buyer and seller, the court concluded that the Agreement was unenforceable as a matter of law. The court also entered judgment on Hodges' counterclaim, awarding her $500 as damages. In fixing the amount of Hodges' attorney fees, the district court awarded $1,300, an amount it deemed reasonably attributable to the "unsigned written agreement" theory, and disallowed the balance of the $3,840 Hodges claimed she had incurred. Both parties appeal.

Kelly maintains that the district court erred in dismissing his action. He further asserts that the court improperly granted judgment on Hodges' counterclaim, because that claim was never properly before the court. In her cross-appeal, Hodges challenges the district court's determination of her attorney fees as improper. We address these issues in turn.

## II

■ The issue of an enforceable oral agreement presents a mixed question of law and fact. *See, e.g., Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350 (1982). Where, as here, the issue is presented on appeal from a summary judgment, the standard of review is whether there are any genuine issues of material fact and, if not, whether the prevailing party was entitled to judgment as a matter of law. In making those determinations, the reviewing court will construe all facts in the record, together with all reasonable inferences, in the light most favorable to the party opposing the motion for summary judgment. I.R.C.P. 56(c); *Lowry v. Ireland Bank,* 116 Idaho 708, 779 P.2d 22 (Ct.App.1989). We freely review the lower court's conclusions of law.

■ Thus, we turn to Kelly's assertion that the district court erroneously reasoned that the absence of Kelly's signature from the Agreement rendered the Agreement invalid. It is true that the Idaho statute of frauds provides that no estate or interest in real property (other than leases for a term not to exceed one year) can be created or transferred except by operation of law or by conveyance or instrument in writing subscribed by the party (or his agent) creating or transferring the interest in question. I.C. § 9–503. It is true also that an agreement for the sale of real property or any interest therein is invalid "unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent." I.C. § 9–505. However, we have noted that

> the object of the statute [of frauds] is to prevent potential fraud by forbidding disputed assertions of enumerated kinds of contracts without any written basis. This purpose is fully satisfied when the parties themselves accept the contract and mutually perform it. *For the same reason, the statute of frauds is inapplicable when a contract, although not fully performed by both sides, is mutually acknowledged to exist.*

*Frantz v. Parke,* 111 Idaho 1005, 1008–09, 729 P.2d 1068, 1971–72 (Ct.App.1986), *citing* 2A CORBIN ON CONTRACTS § 430 (Supp.). Here, there is no question that the parties mutually acknowledged the existence of their written agreement with respect to the purchase of the property. In his complaint, Kelly alleged that

> By written contract dated February 18, 1988, Plaintiff agreed to sell to Defendant and Defendant agreed to buy from Plaintiff, the above described real property for $63,500. A copy of the agreement is attached hereto, marked Exhibit "A" and by reference made a part hereof.

In response to the complaint and by assertion of a counterclaim seeking recovery of $500 paid as earnest money upon submission of the offer to purchase reflected by the Agreement, Hodges averred:

> On February 18, 1988, counterclaimant and counterdefendant entered into the agreement attached to plaintiff's complaint as Exhibit A.

Given the parties' recognition of their Agreement, we hold the district court erred in concluding that the Agreement was in-

valid under the statute of frauds for lack of the seller's signature.

■ Notwithstanding the district court's error, however, Hodges urges that we affirm the order of dismissal upon a proper application of the statute. *See Department of Health and Welfare v. Engelbert,* 114 Idaho 89, 90, 753 P.2d 825, 826 (1988). As mentioned, Hodges does not claim that the statute bars the written Agreement. Rather, she argues that the alleged oral agreement to extend the April 1st closing date violated the statute of frauds and therefore is unenforceable. This argument raises a threshold issue of whether an alleged oral agreement to extend the time for closing the sale under a real estate purchase contract is an agreement within the statute of frauds. This is a question of first impression in Idaho.[2]

The authorities examining this issue are not unanimous. Some jurisdictions apply the general rule that a contract within the statute of frauds cannot be orally modified, and hold that a parole agreement extending time for performance of such a contract is unenforceable.[3] However, most of the recent cases addressing the issue recognize that an oral agreement to substitute the mode or time of performance of an executory contract required to be in writing is valid and binding, provided that no other material term is changed and the agreement is made before the expiration of the written contract.[4] The cases employing this rule generally draw a distinction between the contract, which the statute of frauds requires to be in writing, and its performance, to which the statute does not apply. In our opinion, this latter rule constitutes the better view, allowing the parties to orally extend the time for performance of their agreements, so long as no other material term is changed and the agreement is made before the underlying contract's expiration.

Hodges submits, however, that even under this rule, the alleged oral agreement to extend the closing date did not merely change the time for performance of the written Agreement, but changed additional, material terms. Hodges further contends that those additional terms were not sufficiently certain, rendering specific performance an impermissible remedy. We are unpersuaded.

■ The record does not indicate any variance between the terms of the financing contemplated under the original, written Agreement, and those of the loan ultimately approved by FHA. The issues raised by Hodges present, at most, unresolved questions of material fact which must be decided by the trial court. Thus, upon the record before us, we conclude that summary judgment of dismissal was improper. Accordingly, the judgment is vacated and the case is remanded to the district court. We note, however, that in order to enforce the allegedly modified Agreement, the district court first must determine: (1) that the parties orally

---

2. The case of *Southern v. Southern,* 92 Idaho 180, 438 P.2d 925 (1968), which holds that an oral extension of an option to purchase realty was within the statute of frauds and unenforceable, is not controlling. An agreement extending the time for performance of a contract within the statute of frauds involves the performance of a bilateral contract, and is distinguishable from an agreement to extend time for exercise of an option, which involves an issue as to the creation of a contract by the timely acceptance of an offer in a situation in which the statute requires an offer and acceptance to be in writing to be enforceable. *See, e.g., Willow Brook Recreation Center, Inc. v. Selle,* 96 N.J.Super. 358, 233 A.2d 77 (1967).

3. *See, e.g., Choctaw Home Builders, Inc. v. Lena, Inc.,* 223 So.2d 23 (La.App.1969); *Hawkins v. Studdard,* 132 Ga. 265, 63 S.E. 852 (1909). *See*

also 72 AM.JUR.2d *Statute of Frauds* § 280, p. 798–99 (1974); 37 C.J.S. *Statute of Frauds* § 232(b), p. 735–37 (1943); RESTATEMENT (SECOND) OF CONTRACTS §§ 138, 150 comments (a), (d) (1981).

4. *See, e.g., Davis v. Patel,* 32 Ark.App. 1, 794 S.W.2d 158 (1990); *Rex Lumber Co. v. Acton Block Co.,* 29 Mass.App.Ct. 510, 562 N.E.2d 845 (1990); *Patten v. Nagy,* 86 A.D.2d 890, 447 N.Y. S.2d 334 (1982); *Bower v. Davis & Symonds Lumber Co.,* 119 N.H. 605, 406 A.2d 119 (1979); *Wolf v. Crosby,* 377 A.2d 22 (Del.Ch.1977); *Adams v. Thompson,* 87 N.M. 113, 529 P.2d 1234 (1974); *Poznik v. Urton & Co.,* 30 Colo.App. 475, 496 P.2d 1073 (1972); *Dracopoulas v. Rachal,* 411 S.W.2d 719 (Tex.1967). *See also* 72 AM. JUR.2d *Statute of Frauds* § 280, p. 798 (1974); 37 C.J.S. *Statute of Frauds* § 232(b), p. 735–37 (1943).

agreed to an extension of the contract; (2) that the oral agreement modified no other material terms of the original Agreement; and (3) that the parties agreed to the extension before the original written Agreement had expired. We also note the required standard of proof applicable to these issues. Our Supreme Court has held that— in order to prove an oral modification of a written agreement—a party must establish the oral modification by clear and convincing evidence. *Kline v. Clinton*, 103 Idaho 116, 121, 645 P.2d 350, 355 (1982). Finally, in determining the facts in this case, the district court may consider the aspects of waiver and detrimental reliance that may pertain to the conduct of the parties. *See Idaho Migrant Council, Inc. v. Northwestern Mut. Life Ins. Co.*, 110 Idaho 804, 718 P.2d 1242 (Ct.App.1986); *Roundy v. Waner*, 98 Idaho 625, 628, 570 P.2d 862, 865 (1977).

### III

■ Because we are remanding this case, we address the additional issues raised, for guidance to the district court. Kelly argues that the award of $500 damages to Hodges on her counterclaim was inappropriate and should be vacated. In her motion for summary judgment, Hodges requested from the court "an Order of Summary Judgment in defendant's favor *on claims of plaintiff's complaint*." (Emphasis added.) The sole issue briefed and argued before the court involved Hodges' assertion that Kelly's complaint was barred under the statute of frauds. We are cognizant of the flexibility permitted the trial court in crafting the form of relief granted on summary judgment, *see Brummett v. Ediger*, 106 Idaho 724, 682 P.2d 1271 (1984); however, we also recognize that the party against whom judgment is to be rendered must at least have some notice that the court is considering the claim, and be afforded an opportunity to defend against it. Hodges' counterclaim was not before the court, and the court erred in entering

judgment on it. Accordingly, the judgment, including the damages award, must be vacated.

### IV

■ We next address the attorney fees issue raised in Hodges' cross-appeal. Hodges contends that, as the prevailing party in the action, she was entitled to an award of attorney fees reasonably incurred in defending the claim against her, and that the district court erred in restricting her fee award to the amount attributable to the specific theory—an incorrect theory—upon which the court chose to rule. Because we have concluded the district court erred in granting summary judgment to Hodges, she no longer is the prevailing party to the action. However, inasmuch as we also agree the court erred in determining the amount awarded, we will address that point for guidance.

The question of what constitutes a "reasonable" attorney fee involves a discretionary determination by the trial court. *Spidell v. Jenkins*, 111 Idaho 857, 727 P.2d 1285 (Ct.App.1986). In exercising this discretion, the court must act consistently with the applicable legal standards listed in I.R.C.P. 54(e)(3). *Associates Northwest v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987). Thus, in *Nalen v. Jenkins*, 113 Idaho 79, 741 P.2d 366 (Ct.App.1987), *appeal after remand*, 114 Idaho 973, 763 P.2d 1081 (Ct.App.1988), we rejected an approach similar to that employed by the district court here. In *Nalen*, we held that where attorney fees are allowed under I.C. R.P. 54(e)(1), the amount of attorney fees should not be calculated based upon individual prevailing and nonprevailing theories. *Id.* Rather, upon final resolution of this case in the district court, the court should fix the amount of the fee award by an appropriate application of the factors set forth in I.R.C.P. 54(e)(3).[5]

---

5. Hodges also attacks the propriety of the district court's *ex parte* order on Kelly's application for a stay of execution for collection of the

judgment. Inasmuch as we are vacating the judgment, we need not address the issue here.

## CONCLUSION

The summary judgment dismissing Kelly's complaint is vacated. The awards of damages and attorney fees to Hodges are also vacated. The case is remanded to the district court for further proceedings consistent with our decision. Costs to appellant. No attorney fees allowed on appeal.

SWANSTROM and SILAK, JJ., concur.