20 P.3d 21

TREASURE VALLEY GASTROENTEROLOGY SPECIALISTS, P.A., an Idaho corporation, Plaintiff–Appellant,

v.

Judith A. WOODS, Defendant–Respondent.

No. 25593.

Court of Appeals of Idaho.

Jan. 8, 2001.

Rehearing Denied March 7, 2001.

Manweiler, Wilcox, Trout & Manweiler, PLLC, Boise, for appellant. Kim J. Trout argued.

Hamilton, Michaelson Hilty, Nampa, for respondent. Mark R. Hilty argued.

LANSING, Judge.

Plaintiff Treasure Valley Gastroenterology Specialists, Inc. (Treasure Valley) brought this action against defendant Dr. Judith Woods, alleging that Dr. Woods breached a noncompetition covenant that had been a part of her employment contract with Treasure Valley. Treasure Valley claims that the district court erred, when faced with motions for summary judgment from both parties, by granting Woods' motion for summary judgment and denying Treasure Valley's motion. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

Treasure Valley is a professional medical corporation located in Nampa. During the period pertinent to this case, the president and principal employee of the corporation was Dr. Raquel Croitoru. Both Dr. Croitoru and Dr. Woods are physicians specializing in gastroenterology.

In 1994, Dr. Croitoru was practicing with Treasure Valley and Dr. Woods was serving in the military and residing in the state of Ohio. In the spring of that year, the two began discussing the possibility of Dr. Woods coming to work for Treasure Valley. These initial discussions progressed favorably, and Dr. Croitoru sent a proposed two-year employment contract to Dr. Woods for her consideration. Dr. Woods replied by a letter in which she expressed concern because the draft contract did not adequately address what the parties' relationship would be at the end of the two-year employment term. Dr. Woods' letter stated that she understood that the parties were to become full and equal partners, whereas the proposed agreement contained only language about an office shar-

ing arrangement. She requested a letter of intent with details on her options regarding the possibility of becoming a partner with Dr. Croitoru.

Dr. Croitoru subsequently sent an amended draft of the employment agreement which deleted some of the language about office sharing but did not completely address Dr. Woods' concerns. The evidence is in dispute as to the parties' communications with respect to this second draft. According to Dr. Croitoru's affidavit, she gave the second draft to Dr. Woods in the spring of 1995 when Dr. Woods was visiting in Nampa, and at that time Dr. Woods told Dr. Croitoru "that if the agreement was acceptable to her she would be willing to move to Idaho and to commence work in May of 1995." Dr. Woods, on the other hand, testified that Dr. Croitoru said that if Dr. Woods had any concerns about the contract, they "could be worked out" after she moved to Nampa.

Dr. Woods moved to Nampa and began working at Treasure Valley in May 1995, but she never signed the second draft or any written employment agreement. According to Treasure Valley's evidence, during the course of Dr. Woods' work at Treasure Valley, Dr. Woods was twice asked to sign the contract, and on both occasions she said that she agreed with its terms generally but wanted minor revisions, the nature of which were never specified. Dr. Woods continued to work for Treasure Valley until February 1997, receiving a salary and other benefits identical to those specified in the second draft of the employment contract.

Both versions of the draft employment contract submitted to Dr. Woods contained a noncompetition clause which would prohibit her from engaging in the practice of medicine for a period of two years within a fifty-mile radius of Nampa after the cessation of her employment with Treasure Valley. The drafts also included a liquidated damages clause specifying compensation that would be payable to Treasure Valley in the event that Dr. Woods' breached the noncompetition covenant.

In February 1997, Dr. Woods left Treasure Valley and opened her own practice in Nampa. Treasure Valley thereupon brought this action for breach of the noncompetition covenant and for enforcement of the liquidated damages clause. In her responsive pleadings, Dr. Woods denied ever having agreed to either version of the employment contract, including the noncompetition clause, and she raised the statute of frauds as a defense.

Cross-motions for summary judgment were filed by the parties. Dr. Woods argued that the statute of frauds barred enforcement of the noncompetition clause because she had never signed the proposed employment contract. Treasure Valley responded that the statute of frauds did not bar enforcement of the covenant because Dr. Woods had acknowledged the agreement and because she should be estopped from relying upon the statute of frauds. The district court granted Dr. Woods' motion and denied Treasure Valley's. This appeal followed.

## II.

## ANALYSIS

Summary judgment must be granted if there are no material issues of fact and the moving party is entitled to judgment as a matter of law. Idaho Rule of Civil Procedure 56(c); *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 516–17, 808 P.2d 851, 853–54 (1991); *Suitts v. First Sec. Bank of Idaho, N.A.*, 125 Idaho 27, 31, 867 P.2d 260, 264 (Ct.App.1993). In assessing whether a summary judgment is warranted, a court must construe the evidence in the record in the light most favorable to the party opposing the motion and must draw all reasonable inferences in that party's favor. *Avila v. Wahlquist*, 126 Idaho 745, 747, 890 P.2d 331, 333 (1995); *G & M Farms*, 119 Idaho at 517, 808 P.2d at 854. The burden of proving the absence of an issue of material fact rests upon the moving party. *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991); *G & M Farms, supra*. Nevertheless, when a motion for summary judgment has been properly supported with evidence indicating the absence of material factual issues, the burden shifts to the nonmoving party to make a showing of the existence of a genuine issue of material fact that would preclude summary judgment. *State v. Shama Re-*

*sources Ltd. P'ship*, 127 Idaho 267, 270, 899 P.2d 977, 980 (1995); *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 530–31, 887 P.2d 1034, 1037–38 (1994); *Boise–Kuna Irrigation District v. Gross*, 118 Idaho 940, 942, 801 P.2d 1291, 1293 (Ct.App.1990). This standard of review is not affected by the fact that both parties have filed motions for summary judgment. Rather, each motion must be separately considered on its own merits, with the court drawing all reasonable inferences against the party whose motion is under consideration. *Stafford v. Klosterman*, 134 Idaho 205, 998 P.2d 1118, 1119 (2000); *Bear Island Water Ass'n, Inc., v. Brown*, 125 Idaho 717, 721, 874 P.2d 528, 532 (1994).

 Treasure Valley has presented evidence sufficient to raise a factual issue as to whether an oral or implied contract encompassing the noncompetition clause was formed when Dr. Woods moved to Idaho and began employment after allegedly stating that she would begin work for Treasure Valley if the second draft agreement was acceptable to her. The question presented is whether the enforcement of that oral or implied agreement is prohibited by the statute of frauds, Idaho Code § 9–505, which provides:

> In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:
>
> 1. An agreement that by its terms is not to be performed within a year from the making thereof.

A contract of employment for a fixed term greater than one year is subject to this statute, *Burton v. Atomic Workers Fed. Credit Union*, 119 Idaho 17, 20, 803 P.2d 518, 521 (1990); *Allen v. Moyle*, 84 Idaho 18, 23, 367 P.2d 579, 582 (1961), as is a covenant prohibiting competition for longer than one year.

*Frantz v. Parke*, 111 Idaho 1005, 1007–08, 729 P.2d 1068, 1070–71 (Ct.App.1986). Therefore, the alleged oral or implied employment contract with the noncompetition covenant, upon which Treasure Valley relies, is rendered unenforceable by the statute of frauds unless there are circumstances which exempt this transaction from the strictures of the statute.[1]

Treasure Valley asserts three exceptions to avoid application of the statute of frauds: part performance, equitable estoppel, and acknowledgement of the contract. We therefore consider each.

## A. Part Performance

 Treasure Valley invokes the equitable doctrine of part performance, arguing that partial performance by both parties of terms of the draft employment contract takes the contract outside of the statute of frauds. This argument is without merit. First, it has long been established in Idaho law that the doctrine of part performance is not applicable to a contract which comes within the statute of frauds because it cannot be performed within one year. *Allen*, 84 Idaho at 23, 367 P.2d at 582. "The mere part performance of such a contract does not take it out of the operation of the statute or permit a recovery under the contract for any part of the contract remaining executory. . . . [T]o hold that part performance is performance would be a nullification of the statute." *Id.* (quoting 49 AM.JUR. 798, § 497). *See also Burton*, 119 Idaho at 20, 803 P.2d at 521.

 Second, under Idaho law part performance *per se* does not remove a contract from the operation of the statute of frauds. Rather, "[t]he doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel." *Frantz*, 111 Idaho at 1009, 729 P.2d at 1072. *See also Wing v. Munns*, 123 Idaho 493, 500, 849 P.2d 954, 961 (Ct.App.1992). Therefore,

1. The district court incorrectly expressed the effect of the statute of frauds as preventing the *formation* of a contract. The statute of frauds does not prevent the creation of an oral contract but precludes the contract's enforcement. Thus, in *Hoffman v. S.V. Co., Inc.*, 102 Idaho 187, 628 P.2d 218 (1981), the Supreme Court affirmed the trial court's holding that an oral contract for the conveyance of real property had been formed but that failure to comply with the statute of frauds rendered the oral agreement unenforceable. *See also Hemingway v. Gruener*, 106 Idaho 422, 424, 679 P.2d 1140, 1142 (1984); *Wing v. Munns*, 123 Idaho 493, 499, 849 P.2d 954, 960 (Ct.App.1992).

the question whether part performance allows Treasure Valley to avoid application of the statute of frauds depends upon whether the part performance is such as to equitably estop Woods from relying upon the statute as a defense.

## B. Equitable Estoppel

We turn, then, to the equitable estoppel issue. With respect to the party to be estopped, the elements of equitable estoppel are:

... (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question[;] (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Tew v. Manwaring,* 94 Idaho 50, 53, 480 P.2d 896, 899 (1971). *See also Charpentier v. Welch,* 74 Idaho 242, 248, 259 P.2d 814, 817 (1953); *Frantz,* 111 Idaho at 1010, 729 P.2d at 1073. Where these elements have been proven, estoppel bars the party making the false representation from raising the statute of frauds as a defense. *Frantz, supra.*

Importantly for the present case, we held in *Frantz* that the reliance by the party claiming estoppel must be referable only to the contractual term that is in dispute. The *Frantz* case presented facts remarkably similar to those in the case before us. The plaintiff, Frantz, was a chiropractor who practiced alone until another chiropractor, defendant Parke, accepted employment with Frantz. After nine months of practicing with Frantz, Parke discontinued the relationship and opened his own competing practice in the same town. Frantz sued, contending that the oral employment contract included a covenant not to compete. He claimed that the

covenant was an integral part of the contract and that he never would have hired Parke without it. Parke, however, denied any agreement regarding a noncompetition covenant and claimed that he would not have gone to work for Frantz if Frantz had insisted upon a noncompetition clause. This Court held that the partial performance presented in that case would prevent application of the statute of frauds only if the partial performance gave rise to estoppel. We then analyzed whether the elements of estoppel were satisfied. The reliance asserted by Frantz included furnishing employment to Parke, advertising Parke's presence in the practice, referring patients to Parke, and investing money in remodeling an office for Parke's use. We noted that these actions constituted Frantz's participation in the overall employment arrangement, but the question presented was "whether they also constituted the kind of reliance necessary to obtain equitable relief from the statute of frauds." *Id.* at 1010, 729 P.2d at 1073. We concluded that the acts did not constitute such reliance because they were not referable to the alleged noncompetition covenant. We explained:

[P]erformance in reliance upon an oral promise must be explainable only by existence of the promise. The performance must evidence the promise.

Here, Frantz's actions tend to evidence an employment relationship. But that is not the issue. The actions do not evidence, nor are they explainable only by, the particular agreement alleged in Frantz's complaint—a noncompetition covenant. ...

We realize that the referability requirement has its limits. A plaintiff should not be put to the impossible burden of proving unique reliance upon every provision in an oral agreement. But the plaintiff must show reliance upon the agreement as alleged, to which the statute of frauds applies.

*Id.* at 1011, 729 P.2d at 1074 (citations omitted).

In our view, the present case is indistinguishable from *Frantz,* and the same result is required in both cases. Here, as in *Frantz,* both parties agree that an employment relationship was formed, and there is

no dispute about the terms and conditions of the employment other than the noncompetition covenant. Treasure Valley has alleged facts to show a misrepresentation by Dr. Woods through evidence that "Dr. Woods told [Dr. Croitoru] that if the agreement was acceptable she would be willing to move to Idaho and to commence work in May of 1995." This alleged statement by Dr. Woods, coupled with her move to Nampa and commencement of employment, is sufficient to raise a factual issue as to whether Dr. Woods, by her statements and conduct, led Treasure Valley to believe that she agreed to all terms of the second draft, including the noncompetition clause. However, Treasure Valley has not shown acts of reliance that are referable to the alleged contract term that is in dispute, the covenant against competition.

As evidence of its reliance Treasure Valley points to Dr. Croitoru's testimony that she would not have allowed Dr. Woods to start or continue work if she had known that Dr. Woods did not agree to all of the employment terms presented in the second draft. Treasure Valley also provided Dr. Woods with an office and access to its facilities and patient base. As in *Frantz*, however, none of these acts of reliance are explainable *only* by an agreement to the noncompetition covenant or Treasure Valley's version of the conversations between Dr. Woods and Dr. Croitoru. These acts of Treasure Valley in providing employment, facilities and patient referrals to Dr. Woods are equally consistent with Dr. Woods' version of the transaction—that Dr. Croitoru agreed to allow Dr. Woods to begin work without agreement on all the terms of the employment in the expectation that the details of the contract would be worked out later. Treasure Valley's claimed acts of reliance do not provide evidence of the contractual term asserted by Treasure Valley which, when combined with the other elements of equitable estoppel, could serve as a substitute for the writing that is otherwise required by the statute of frauds. Because Treasure Valley did not present the requisite evidence of reliance, the district court correctly held that Dr. Woods was not estopped to invoke the statute of frauds.

## C. Acknowledgement of the Contract

Treasure Valley next argues that the statute of frauds is inapplicable because Dr. Woods acknowledged the contract in her responses to interrogatories. These interrogatory answers include admissions that Dr. Woods received a written contract containing a covenant not to compete and that the compensation and benefits she received during her employment by Treasure Valley were identical to those specified in the unsigned amended employment agreement. We do not agree with Treasure Valley's assertion that these discovery responses amount to an acknowledgement of the contract or remove the bar of the statute of frauds.

A defendant's admission of the unwritten contract during the course of litigation will prevent the defendant from relying upon the statute of frauds. Thus, in *Kelly v. Hodges,* 119 Idaho 872, 811 P.2d 48 (Ct.App.1991), we held that the district court erred in applying the statute of frauds to invalidate an agreement for the sale of real property which lacked the seller's signature where the seller alleged the agreement in his complaint, attaching it to the complaint as Exhibit A, and the defendant buyer in her answer and counterclaim likewise alleged that the parties had entered into the agreement attached to the plaintiff's complaint as Exhibit A. *Id.* at 874–75, 811 P.2d at 50–51. In that case both parties had judicially admitted the existence of the contract. However, "[i]n order for an admission to operate to remove the bar of the Statute, it must in fact be an acknowledgement of the contract alleged, whether the admission is contained in a complaint, responsive pleading, deposition, other testimony, or otherwise in a judicial proceeding." WILLISTON ON CONTRACTS, § 27:10 at 89–90 (4th ed.1999). Here, Dr. Woods has never admitted that she agreed to the covenant not to compete. At all stages of this case, she has consistently denied agreeing in total to the draft contracts that were presented to her or specifically to the covenant not to compete. "[W]here the 'admission' consists of statements merely confirming ... that the defendant had agreed to certain terms different from those alleged by the plaintiff, it will not operate to remove the

alleged contract from the Statute...." WIL-LISTON, § 27:10, at 91–92. *See also Frantz*, 111 Idaho at 1009, 729 P.2d at 1072, where we held that there was no acknowledgement of an employment contract with a noncompetition clause even though the defendant did admit to a contract with all the other terms as alleged.

 Treasure Valley also argues that Dr. Woods "acknowledged" the contract by coming to work at Treasure Valley after having allegedly said that she would come to work if the amended employment agreement was acceptable to her. However, this disputed evidence is nothing more than evidence of the formation of a contract-it presents no proof of circumstances that would remove the alleged contract from the bar of the statute of frauds. To hold that evidence of formation of an oral or implied contract constitutes evidence of an admission or acknowledgement of the contract that would preclude application of the statute of frauds would eviscerate that statute.[2]

It was within Treasure Valley's power to insist upon execution of the contract before Dr. Woods began work or thereafter. Having failed to do so, Treasure Valley is now prevented by the statute of frauds from gaining judicial enforcement of the contractual terms that it requested but did not secure.

### D. Attorney Fees Awarded by the District Court

The district court granted attorney fees to Dr. Woods pursuant to I.C. § 12–120(3). On appeal, Treasure Valley argues that the attorney fee award must be set aside because the district court erred in granting summary judgment. However, because we have upheld the district court's summary judgment decision, and Treasure Valley presents no other argument against the award of fees,

the district court's order granting attorney fees is also affirmed.

### E. Attorney Fees on Appeal

 Dr. Woods also requests an award of attorney fees incurred on this appeal pursuant to I.C. § 12–120(3), which mandates an award of attorney fees in any civil action to recover on a contract for services. Actions on employment contracts are subject to the attorney fee provisions of § 12–120(3). *See Clark v. State, Dep't of Health and Welfare*, 134 Idaho 527, 5 P.3d 988, 993 (2000); *Property Mgmt. W., Inc. v. Hunt*, 126 Idaho 897, 899, 894 P.2d 130, 132 (1995); *Atwood v. Western Constr., Inc.*, 129 Idaho 234, 241, 923 P.2d 479, 486 (Ct.App.1996). Therefore Dr. Woods will be granted attorney fees for her response to this appeal pursuant to I.C. § 12–120(3) and Idaho Appellate Rule 41.

### CONCLUSION

The contract upon which Treasure Valley bases its claim for recovery falls within the purview of the statute of frauds. Treasure Valley's evidence is insufficient to demonstrate equitable estoppel, and Treasure Valley has shown no admission of the contract by Dr. Woods. Accordingly, Dr. Woods is entitled to summary judgment on the basis that the alleged contract is rendered unenforceable by the statute of frauds. Summary judgment denying Treasure Valley's claim is affirmed. Costs and attorney fees on appeal are awarded to respondent.

Chief Judge SCHWARTZMAN and Judge Pro Tem MEEHL, concur.

---

**2.** To the extent that Treasure Valley relies upon Dr. Woods' commencement of employment as an "acknowledgement" of the contract, the argument is nothing more than a reassertion under a different semantic guise of Treasure Valley's part-performance argument which we have rejected above.