197 P.3d 789

Rodney PETERSON, an individual,
Plaintiff–Appellant–Cross
Respondent,

v.

William R. SHORE and Roberta S.
Shore, Defendants–Respondents–
Cross Appellants.

No. 34568.

Court of Appeals of Idaho.

Nov. 3, 2008.

Blake S. Atkin of Atkin Law Offices, PC, Bountiful, Utah, for appellant-cross respondent.

Kent A. Higgins of Merrill & Merrill, Pocatello, for respondent-cross appellants.

PERRY, Judge.

Rodney Peterson appeals from the district court's order denying his motion for summary judgment and granting summary judgment in favor of William R. Shore and Roberta S. Shore. The Shores cross-appeal from the district court's order denying their motion for attorney fees. For the reasons stated below, we affirm the summary judgment but reverse the denial of attorney fees and remand for additional proceedings.

## I.

### FACTS AND PROCEDURE

In 2001, Peterson relocated his business from his home to property owned by the Shores. The Shores had purchased the property for $120,873. At the time that Peterson established his business on the property, it was orally agreed that he would pay a monthly rent of $1,108. The parties further agreed that Peterson could purchase the property from the Shores at some point in the future upon payment of their purchase price with 1 percent annual interest. Some additional terms of that future purchase are in dispute. Peterson alleges that the parties made an oral modification to the oral agreement relieving him of the obligation of paying monthly rent and allowing him to purchase the land whenever he was able to by paying the purchase price with interest, plus any accumulated rent payments then owing. The Shores contend that, in order to qualify for the property exchange tax benefits of 26 U.S.C. § 1031, they had to hold the property for one year and that the agreement was that Peterson could purchase the property for the purchase price plus interest immediately following that period if he paid all his rent payments on time—which he did not. Peterson made several improvements to the land for the benefit of his business, although most of the improvements were made with capital obtained through the addition of business partners.

Peterson recognized that the Shores purchased the property in a Section 1031 exchange, but he made no tender to exercise his purchase option at the expiration of the first year. It was not until four years later, when Peterson's business partners removed him from the partnership, that Peterson attempted to exercise his claimed right to purchase the property through a business entity named Indian Knoll Elk Ranch, LLC. He gave the Shores written notification of his intention along with a check for $500 in earnest money. Peterson promised full payment at closing, but no other money was tendered. The Shores, who were negotiating with Peterson's former business partners regarding the property after learning of his ouster, refused to honor the agreement that Peterson alleged. Subsequently, no sale to Peterson's former business partners was accomplished, but the Shores continued their refusal to sell Peterson the property.

After Peterson instituted this action, the Shores moved to dismiss. Peterson moved for summary judgment pursuant to I.R.C.P. 56. The district court initially denied the motion to dismiss, but after a hearing on Peterson's summary judgment motion, the district court denied Peterson's motion and sua sponte granted summary judgment to the Shores on the basis that Peterson's claim was barred by the statute of frauds. The district court held that Peterson's contention that the Shores acknowledged a contract in a deposition did not remove it from the requirements of the statute of frauds because

the contract that the Shores acknowledged was different from the contract that Peterson alleged. The district court considered, but rejected, Peterson's argument for imposition of a constructive trust on the property because both of these arguments were predicated on Peterson's assertion that the Shores had admitted the existence of the contract during a deposition.

The Shores filed a motion for costs and attorney fees pursuant to I.C. § 12–120, 12–121, and I.R.C.P. 54(d), (e), which the district court denied. The district court reasoned that costs were inappropriate because they did not rise to the level of exceptional costs required by the rule. The district court further reasoned that attorney fees were inappropriate because it had previously held that a contract never existed and, therefore, this action was not based on a commercial transaction. Finally, the district court held that the action was not brought frivolously. Peterson appeals and the Shores cross-appeal the denial of attorney fees.

## II.

### STANDARD OF REVIEW

Summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct.App.1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct.App.1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini–Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct.App.2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick*, 126 Idaho at 312, 882 P.2d at 479.

## III.

## ANALYSIS

### A. Peterson's Appeal from the Grant of Summary Judgment to the Shores

Peterson argues that the district court erred in refusing to order specific performance of the oral contract to purchase the property. He alleges that the statute of frauds does not bar his claims because the Shores admitted in a deposition to the essential terms of the contract. Peterson next argues that the district court erred in refusing to impose a constructive trust on the property because, he alleges, the Shores purchased it as agents of Peterson and later refused to reconvey it. Therefore, Peterson asserts that the district court erred in holding that his claim was barred by the statute of frauds and by granting summary judgment sua sponte in favor of the Shores. We first consider the statute of frauds claim, as its application in this case renders further analysis of Peterson's arguments unnecessary.

If a trial court denies a party's motion for summary judgment, it has discretion to grant summary judgment to the opposing party. *Harwood v. Talbert*, 136 Idaho 672, 677, 39 P.3d 612, 617 (2001); I.R.C.P. 56(c). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

Idaho Code Section 9–505 provides:

In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

. . . .

4. An agreement for the leasing, for a longer period than one (1) year, or for the sale, of real property, or of an interest therein. . . .

Therefore, the alleged oral contract for the lease and/or sale of land, upon which Peterson relies, is rendered unenforceable by the statute of frauds unless there are circumstances which exempt this transaction from the strictures of the statute.

In his motion for summary judgment, Peterson asserted acknowledgement of the contract as an exception to avoid application of the statute of frauds. The district court held that the Shores did not acknowledge the specific contract on which Peterson sought enforcement. In granting summary judgment for the Shores, the district court then denied the applicability of another exception to avoid application of the statute of frauds—equitable estoppel. We therefore consider each, respectively.

### 1. Acknowledgement of an oral contract

A defendant's admission of an unwritten contract during the course of litigation will prevent the defendant from relying upon the statute of frauds. *Treasure Valley Gastroenterology Specialists, P.A. v. Woods*, 135 Idaho 485, 491–92, 20 P.3d 21, 27–28 (Ct.App. 2001); *see also Kelly v. Hodges*, 119 Idaho 872, 874–75, 811 P.2d 48, 50–51 (Ct.App.1991) (holding that the district court erred in applying the statute of frauds to invalidate an agreement for the sale of real property which lacked the seller's signature where both parties had judicially admitted the existence of the contract). However,

[i]n order for an admission to operate to remove the bar of the Statute, it must in fact be an acknowledgement of the contract alleged, whether the admission is contained in a complaint, responsive pleading, deposition, other testimony, or otherwise in a judicial proceeding.

. . . [I]t must be clear from the defendant's judicial statement that there is "an unqualified or unconditional admission of . . . facts which would constitute the for-

mation of a valid, oral contract." Thus, where the "admission" consists of statements merely confirming ... that the defendant had agreed to certain terms different from those alleged by the plaintiff, it will not operate to remove the alleged contract from the Statute....

10 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 27:10 (4th ed.1999) (footnotes omitted). *See also Frantz v. Parke,* 111 Idaho 1005, 1009, 729 P.2d 1068, 1072 (Ct.App.1986) (holding that there was no acknowledgement of an employment contract with a noncompetition clause even though the defendant admitted to a contract with all the other terms as alleged); *Treasure Valley,* 135 Idaho at 491–92, 20 P.3d at 27–28 (holding that acknowledgment of a contract with different terms does not operate as an admission).

■ In this case, William Shore was questioned regarding the existence and terms of the agreement at a deposition:

Q. Let me ask you about the rent. Countryside Farm Repair owed you rent; right?

A. Yes.

Q. And was there any kind of an agreement between you and your wife as the owners of the property and Countryside Farm Repair with respect to the rent?

A. Yes.

Q. What was the agreement?

A. The agreement was 1 percent a month.

Q. Was that an agreement in writing?

A. No, verbal agreement.

. . . .

Q. And at the time that that agreement was entered into you understood that Countryside was going to build a building on the premises?

A. Yes, that was my understanding.

Q. Was it your understanding that they were going to be there for a number of years in that building operating the business?

A. No.

Q. What was your understanding?

A. My understanding was they were going to purchase the ground from me, as soon as possible.

Q. Was there a purchase price agreed to with regard to the ground?

A. The purchase price was going to be the same price that I paid for it if they paid their rent.

Q. Let me ask you, how much rent were you expecting them to pay?

A. Okay, 1 percent of the purchase price-the purchase price was $120,000; 1 percent is $1,200. But you divide that by 12 months, so you come out with $1,108 per month.

Q. And that was agreed upon between you and your wife and Countryside?

A. Yes.

. . . .

Q. And what it was really contemplating was the purchase of the ground from you?

A. Yes.

Q. And if they paid that 1 percent a month, then at the time of purchase they would just pay you what you had paid for the ground.

A. Yes.

Q. And what did you pay for the ground?

A. $120,000, approximately; I don't remember-close.

Q. That agreement that you are talking about, that purchase agreement, that was between you and Countryside Farm Repair, Inc.; right?

A. Well, basically it was between me and Rod Peterson....

Q. I guess we can get into that at some point, but at the time you knew he was operating a business as Countryside Farm Repair, Inc.; right?

A. Oh, yes.

In Peterson's complaint, he alleged that the parties had a purchase agreement for $118,000 plus 1 percent interest as rent, with any amount of unpaid rent payable at closing in addition to the purchase price. The complaint also alleged that Peterson tendered $220,000 to purchase the property, represent-

ing the accrued rent and purchase price paid by the Shores. Even resolving all factual inferences in Peterson's favor, his claim that William Shore admitted to the existence of the specific terms of the contract in his deposition fails.

In William Shore's deposition, he never admitted to an agreement that would allow Peterson to occupy the premises without paying rent for four years with the understanding that he could make up the outstanding rent in his tender to purchase. To the contrary, William admitted in his deposition that there was an agreement to allow Peterson to purchase the property *if* he paid rent on time. Additionally, the purchase price itself remained uncertain as William testified that it was about $120,000, Peterson alleged that it was $118,000, and Peterson later offered $220,000. The district court correctly concluded that the agreement alleged in Peterson's pleadings did not contain the same material terms as the agreement admitted to by William in his deposition. Thus, the district court did not err in denying Peterson's motion for summary judgment which was based on the Shores's admission to the existence of the oral contract.

### 2. Doctrine of equitable estoppel and constructive trust

■ Peterson has also made a confusing argument for application of the doctrines of equitable estoppel and constructive trust. As argued to this Court, Peterson claims that, because William admitted to the orally-modified oral contract under oath, the Shores are estopped from asserting the statute of frauds and that he should be granted specific performance of the contract thereby resulting in the Shores holding the property in constructive trust in favor of Peterson. However, we have determined, as did the district court, that Peterson's evidence does not show the existence of an oral contract. William Shore did not admit the contract alleged by Peterson and, therefore, Peterson's position that the valid oral contract is the basis of his equitable estoppel and constructive trust claims accordingly fails. Therefore, we affirm the district court's order denying Peterson's motion for summary judgment and granting summary judgment

sua sponte in favor of the Shores. Because the district court did not err in holding that Peterson's claim was procedurally barred by the statute of frauds, we need not further address any of Peterson's arguments on appeal.

### B. Cross–Appeal from the Denial of Attorney Fees in the Underlying Case

The district court also denied the Shores's request for attorney fees. It reasoned that, while Peterson alleged a commercial transaction, because the district court held that the contract was nonexistent, there was no actual transaction upon which to base a claim for attorney fees under I.C. § 12–120. Additionally, the district court held that the suit was not frivolous under I.C. § 12–121. The Shores appeal only the district court's denial of attorney fees under I.C. § 12–120(3). They argue that the district court misconstrued the applicable law when it held that the underlying case was not a commercial transaction because it had held that no contract existed.

■ We review the district court's order denying the Shores's attorney fees for an abuse of discretion. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley,* 119 Idaho at 94, 803 P.2d at 1000.

Idaho Code Section 12–120(3) provides that, "in any civil action to recover ... in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court." The statute defines "commercial transaction" as any transaction other than those for personal or household purposes. As to whether commercial transactions turn on the existence of an alleged agreement, the Idaho Supreme Court has noted that, "where a party alleges the exis-

tence of a contract that would be a commercial transaction under Idaho Code § 12–120(3), that claim triggers the application of the statute and the prevailing party may recover attorney fees even if no liability under the contract is established." *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 287, 92 P.3d 526, 537 (2004).

█ In this case, the district court held in its order denying attorney fees to the Shores that, "because there was no contract found to be in existence by this Court, there is no transaction and the Court is therefore unable to award Attorney fees based upon I.C. § 12–120(3)." This conclusion was inconsistent with the applicable legal standards established by the Idaho Supreme Court. Therefore, the district court's order denying the Shores's motion for attorney fees under I.C. § 12–120(3) was an abuse of discretion. The parties dispute the proper amount of attorney fees for the underlying case. We therefore reverse and remand to the district court for a hearing on the amount of attorney fees to be awarded to the Shores. As the prevailing party, the Shores are entitled to any attorney fees incurred exclusively in defending this action.

## C. Attorney Fees on Appeal

The Shores also allege that they are entitled to attorney fees on appeal pursuant to I.C. §§ 12–120(3), –121. The Shores have prevailed on appeal both on Peterson's claim and on their cross-appeal. As we noted above, the case was based on an alleged commercial transaction. Therefore, as the prevailing party, the Shores are entitled to reasonable attorney fees on appeal pursuant to I.C. § 12–120(3). Because we award attorney fees pursuant to I.C. § 12–120(3), we do not address the propriety of attorney fees under I.C. § 12–121.

## IV.

### CONCLUSION

The statute of frauds bars Peterson's claim that an orally-modified oral contract existed for the sale of land. Therefore, the district court's order denying Peterson's motion for summary judgment and granting summary judgment to the Shores is affirmed. As the prevailing party in the district court in a suit involving a commercial transaction, the Shores were entitled to attorney fees. Therefore, the district court's order denying the Shores's motion for attorney fees is reversed and remanded for additional proceedings. Costs and attorney fees are awarded to the Shores on appeal.

Judge LANSING concurs.

Judge GUTIERREZ specially concurring.

I concur in the affirmation of the district court's order denying Peterson's motion for summary judgment and granting summary judgment in favor of the Shores. The majority of this Court holds that, in his deposition, William Shore did not admit to the material terms of the agreement alleged by Peterson and that, therefore, there was no acknowledgement of the contract. I disagree that William Shore's statements did not constitute an admission of the contract. The record shows that Peterson and the Shores entered into an oral agreement whereby the Shores would purchase the property and re-convey that property to Peterson for the amount which they paid plus interest. This much of the agreement was admitted to by William Shore in his deposition. However, I concur in the majority's result because the agreement also provided for Peterson to purchase the property at the end of one year. This time frame is consistent with the Shores' reliance on a Section 1031 exchange. This effectively made their agreement for the sale of real estate one in which time was of the essence. Regarding this question of when an agreement becomes one in which time is of the essence, it has been noted:

[T]here is a tendency of judicial authority to regard the question as one of construction of the intent of the parties and to hold that time is not of the essence of the contract unless made so by express stipulation or *unless there is something connected with the purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that the contract must be performed at or within the time named.*

77 Am.Jur.2d *Vendor and Purchaser* § 83 (1997) (emphasis added). The contract terms for when Peterson was to purchase the property, along with the use of a Section 1031 exchange by the Shores, make it apparent that the parties intended the oral contract to be performed at the end of one year.

A breach of contract is material or substantial if it "touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." *Tentinger v. McPheters,* 132 Idaho 620, 622, 977 P.2d 234, 236 (Ct.App.1999), *quoting Ervin Constr. Co. v. Van Orden,* 125 Idaho 695, 699, 874 P.2d 506, 510 (1993). When one party materially breaches an agreement, the other party's performance is excused. *J.P. Stravens Planning Assocs., Inc. v. City of Wallace,* 129 Idaho 542, 545, 928 P.2d 46, 49 (Ct.App.1996). Peterson materially breached the agreement by unreasonably delaying the exercise of his right to purchase until the fourth year after the parties entered into the oral agreement. Thus, the Shores performance under the contract was excused.

Even if time were not of the essence, "it is usually said that failure of timely performance will be considered a breach of contract only at law, and that in equity no breach will be deemed to occur until the performance becomes unreasonably late." Roger A. Cunningham et al., The Law of Property 670 (1984). In this case, four years is unreasonably late. Therefore, whether it is considered that time was of the essence or not, in either case Peterson's unreasonable delay operates as a material breach of the agreement and he is, thus, not entitled to relief at law or equity.